**BRISTOL–MYERS COMPANY,**
**Petitioner,**

v.

**Ramon GONZALES et al., Respondents.**

**No. B–6707.**

Supreme Court of Texas.

Feb. 1, 1978.

Rehearing Denied March 8, 1978.

Graves, Dougherty, Hearon, Moody & Garwood, William L. Garwood, Austin, Meredith & Donnell, M. William Meredith, Jr., Corpus Christi, for petitioner.

William R. Edwards, Charles R. Cunningham, Corpus Christi, for respondents.

BARROW, Justice.

Ramon Gonzales sued Bristol-Myers Company, the Upjohn Company, and Dr. Rufino Gonzalez for deafness resulting from administration by Dr. Gonzalez of Bristol-Myers' Kantrex and Upjohn's neomycin. Bristol-Myers and Upjohn were sued in strict liability for improper warnings, and Dr. Gonzalez was sued in negligence for improper treatment. Shortly before the trial, plaintiff Gonzales entered into a settlement agreement with Dr. Gonzalez and non-suited both Dr. Gonzalez and Upjohn.[1] Dr. Gonzalez remained in the case as a third party defendant to Bristol-Myers' claim for indemnity or contribution. Dr. Gonzalez

1. Plaintiff's attorney stated outside the presence of the jury that Upjohn was non-suited because he did not believe it was liable.

also filed a third party complaint against Bristol-Myers seeking indemnity or contribution. The trial court rendered judgment for plaintiff on the jury verdict against Bristol-Myers for $800,000 and denied Bristol-Myers any relief from Dr. Gonzalez. The court of civil appeals reformed the judgment by granting Bristol-Myers contribution from Dr. Gonzalez by reducing the award for plaintiff Gonzales against Bristol-Myers to $400,000. 548 S.W.2d 416. Applications for writ of error were filed by Bristol-Myers, Dr. Gonzalez, and plaintiff Gonzales. We reverse the judgment of the courts below and remand the cause for another trial.

Plaintiff, then 25 years of age, was admitted to the Memorial Medical Center in Corpus Christi on November 22, 1970, as a patient of Dr. Gonzalez because of a severe, but undiagnosed, pain in his left leg. The pain was traced to an infection in his left hip and, on December 20th, Dr. Gonzalez started plaintiff on Kantrex tablets. On December 22nd, Dr. Gonzalez changed the administration of Kantrex to intramuscular injection; and between December 22nd and January 5, 1971, a total of 20.5 grams were administered in this way, according to the nurses' notes.[2] On December 23rd, Dr. Gonzalez made a deep six-to-eight inch incision in the hip and removed the infected tissue. Following the surgery, Dr. Gonzalez started continuous irrigation (washing) of the wound with alternating solutions of Kantrex and Upjohn's neomycin. It is not known how much of these solutions was absorbed into plaintiff's body, but it is uncontradicted that plaintiff's deafness was produced by excessive administration, by tablets, injections, and irrigation, of these two drugs. Plaintiff did not contend that Bristol-Myers' drug, Kantrex, was adulterated or was itself defective, but rather that the drug was "ototoxic" (having the potential to cause deafness) and that the warnings given by Bristol-Myers for its use were inadequate and improper.

Kantrex is the trade name for kanamycin sulfate and is one of about seven antibiotics which may be used to treat the type of bacteria discovered in plaintiff's infection. It is manufactured exclusively in this country by Bristol-Myers and has been sold by it since 1958. Neomycin, another of the antibiotics used to treat the type bacteria found in plaintiff, is manufactured by several drug companies, but the neomycin used by Dr. Gonzalez on plaintiff was distributed by Upjohn. Both Kantrex and neomycin are prescription drugs and, as such, must have package inserts, which are approved by the Food and Drug Administration (FDA), describing the drug and its use. See 21 Code of Federal Regulations 130.9 (1970). The description of each drug is prepared by the drug manufacturer, although it must be approved by the FDA.

These package inserts, in addition to being placed in each package at the time of manufacture, are compiled and published annually by a private company in the Physicians' Desk Reference (PDR). The PDR, published primarily for the guidance of physicians, is distributed to all members of the American Medical Association (AMA), hospitals and other interested persons. The PDR is kept reasonably current through distribution of periodic supplements each year which reflect any change in the package insert. The Kantrex package insert was changed several times between 1958 and the time of the trial as additional information was learned concerning the use and dangers of the drug. There was evidence that a package of Kantrex would retain its effectiveness and could be used from four to five years after its manufacture. Accordingly, the insert in a package could have been published long before use of the drug and could be inaccurate.

■ The jury found that Bristol-Myers failed to give Dr. Gonzalez adequate warnings and specific instructions in the 1970

---

**2.** The 1970 Physicians' Desk Reference (PDR) states in part regarding the dosage of Kantrex:
"In well-hydrated adult patients with normal kidney function, receiving a total dose of 15 grams or less, the risk of ototoxic reactions is minimal."

PDR with respect to the use of Kantrex. They also found that a statement in the 1970 PDR [3] reasonably implied to Dr. Gonzalez that he could use Kantrex in concentrations of 0.25 percent for the continuous irrigation of plaintiff's wound without fear of hearing damage. The jury further found that this statement was false and that it was relied upon by Dr. Gonzalez. The inadequate warnings and the false statement were each found to be a producing cause of plaintiff's deafness. These findings support a recovery against Bristol-Myers on strict liability under Sections 402A and 402B of the Restatement (Second) of Torts. The jury also found that Dr. Gonzalez' failure to use ordinary care in treating plaintiff with Kantrex and neomycin was a proximate cause of plaintiff's deafness. No complaint was raised by anyone as to the findings against Dr. Gonzalez.

Bristol-Myers seeks by its first two contentions a reversal of the judgment and rendition of a take nothing judgment against plaintiff on the ground that there is no evidence to sustain a recovery under strict liability as set forth in Section 402A or Section 402B. In considering these no evidence points we must consider the evidence in the light most favorable to the jury findings, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974).

■ Nine expert witnesses testified regarding the proper use of ototoxic drugs and the adequacy of the warnings and instructions contained in the 1970 PDR regarding the use of Kantrex. This testimony, much of which came from experts associated with Bristol-Myers, clearly constitutes evidence which supports the findings of the jury that the warnings were inadequate and in part false. There was evidence that the PDR entry should have warned a physician to treat the infection, if possible, with a drug less noxious than Kan-

trex and that the wound should be irrigated one time only, as a post-surgical wash, because significant amounts of the drug would otherwise be absorbed in continuous irrigation. There was also evidence that the warnings were inadequate as to the necessity of testing a patient's hearing and kidney function to determine the dosage of Kantrex that might safely be given. The evidence shows Bristol-Myers knew of the potential dangers to the users of this drug prior to its use by Dr. Gonzalez. If a manufacturer knows or should know of potential harm to a user because of the nature of its product, the manufacturer is required to give an adequate warning of such dangers. *Crocker v. Winthrop Laboratories*, 514 S.W.2d 429, 433 (Tex.1974). The jury found that Bristol-Myers did not do so and the findings are supported by the evidence.

■ We agree with the holding of the court of civil appeals that the fact that the package insert which was published in the 1970 PDR had been approved by the FDA did not relieve Bristol-Myers of its obligation to communicate an adequate warning to the users of this dangerous drug. The fact that the approved insert did not adequately warn of potential dangers to the users of this drug was known to the proper officials of Bristol-Myers long before the inadequacy became known to the government officials and a change in the warnings and instructions was required in the package insert.

■ Bristol-Myers asserts by its third contention that the trial court erred in excluding evidence concerning the settlement agreement entered into between plaintiff and Dr. Gonzalez. It was established outside the presence of the jury that a few days before the trial commenced plaintiff entered into a settlement agreement whereby Dr. Gonzalez advanced to plaintiff the sum of $100,000 (which was actually paid by Aetna Casualty and Surety Company, the insurer of Dr. Gonzalez) in full and final

---

**3.** The 1970 PDR stated in part:

"Kantrex injection in concentrations of 0.25 percent (2.5 mg./ml.) has been used satisfacto-

rily as an irrigating solution in abcess cavities, . . . ."

satisfaction of any claim of plaintiff against Dr. Gonzalez. The agreement further provides that plaintiff agrees to repay this amount to Dr. Gonzalez or to those persons making the payment on his behalf (Aetna Casualty) out of any recovery against Bristol-Myers. This type agreement is known as a "Mary Carter" agreement and in *General Motors Corp. v. Simmons*, 558 S.W.2d 855 (1977), we held it was reversible error to exclude from the jury evidence of such an agreement.

Plaintiff and Dr. Gonzalez would have us distinguish this agreement from the one considered by this Court in *Simmons* on two grounds: (1) Dr. Gonzalez did not personally retain any financial interest in plaintiff's recovery; and (2) Dr. Gonzalez did not remain a defendant through any action of his own or plaintiff's.

It is true that the $100,000 was advanced to plaintiff by Dr. Gonzalez' insurer and this sum was to be repaid to the insurer out of any recovery. However, this payment was made on behalf of Dr. Gonzalez, and therefore, Aetna Casualty and Dr. Gonzalez should stand in the same shoes. No distinction was drawn in *Simmons* between the employer, Feld Truck Leasing Corporation, and the employee, Johnson, although only Johnson was a witness and only Feld Truck acquired the financial interest.

Nor is it a valid distinction that plaintiff took a non-suit against Dr. Gonzalez in this case and that Dr. Gonzalez remained in the case as a defendant only by virtue of Bristol-Myers' plea for indemnity or contribution. In *Simmons*, the attorneys for all parties advised the jury that Simmons, Feld and Johnson were not adverse to each other and that all were allies against General Motors.

We conclude that the trial court erred in excluding evidence of the settlement agreement which was properly offered by Bristol-Myers for the purpose of showing the bias or credibility of Dr. Gonzalez. Furthermore, we conclude from an examination of the entire record of this three-week trial that this error amounted to such a denial of the rights of Bristol-Myers as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Therefore, the judgment of the court of civil appeals must be reversed and the cause remanded to the district court for a new trial. Rule 503, Tex.R. Civ.P.

Bristol-Myers' other points complain of procedural errors occurring during the trial which, if sustained, would require a remand for a new trial. Since it is unlikely that these errors will reoccur, at least in the same manner, during the second trial it is unnecessary to consider these points.

The applications for writ of error filed by Dr. Gonzalez and plaintiff complain of the judgment of the court of civil appeals which granted Bristol-Myers contribution from Dr. Gonzalez on the jury verdict under the doctrine of *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964), by reducing the amount of recovery by plaintiff from Bristol-Myers. In view of a remand of the case, these applications are now immaterial.

The judgments of the lower courts are reversed and the cause is remanded for trial on the merits.

SAM D. JOHNSON, J., concurs in the result.