747 F.Supp. 543 (1989)
In re TETRACYCLINE CASES.
Janet Sue CAMBIANO, Plaintiff,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Alicia GORDON, Plaintiff,
v.
E.R. SQUIBB & SONS, INC., et al., Defendants.
Diane M. KLEMME, Plaintiff,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Michael LUNDY, Plaintiff,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Cynthia Sherer MILLER, Plaintiff,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Gregory RUSHER, Plaintiff,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Rebecca RUSHER, Plaintiff,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Ellen SCHULTHEIS, Plaintiff,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Shay Lynn SCHWARTZ, et al., Plaintiffs,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Mark WARMINGTON, Plaintiff,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Elizabeth D. WILLIAMS, Plaintiff,
v.
AMERICAN CYANAMID COMPANY, et al., Defendants.
Nos. 83-0034-CV-W-O-A, 83-0394-CV-W-1, 85-1577-CV-W-1, 85-1294-CV-W-1, 85-1288-CV-W-1, 83-0432-CV-W-1, 85-1290-CV-W-1, 85-1291-CV-W-1, 85-1296-CV-W-1, 83-0801-CV-W-1, 84-1062-CV-M-1 and 83-0393-CV-W-1.
United States District Court, W.D. Missouri.
March 29, 1989.
Baker & Sterchi, C. Philip Rouse, Kansas City, Mo., for defendants.
Stoup & Thompson, Devin House, Kansas City, Mo., for plaintiffs.

ORDER
WHIPPLE, District Judge.
On July 15, 1988, defendants in these actions filed a joint motion for summary judgment on the grounds that federal statutes and regulation preempted state law which would permit plaintiffs to bring claims against these defendants. All but three of the plaintiffs filed a joint response in opposition to the motion on July 29, 1988. Defendants filed a joint reply brief on September 9, 1988, in support of their motion. By a letter dated November 4, 1988, defendants alerted this court to a ruling in a case which had been on appeal when the briefs were prepared. Plaintiffs responded by letter dated November 22, 1988. For the reasons set forth below, the motion will be denied.
*545 Also on July 15, 1988, defendants in these actions filed a joint motion for summary judgment on the claims for punitive damages in these civil actions. Plaintiffs filed their response in opposition to the motion on July 29, 1988. Defendants filed a reply brief on August 5, 1988, in support of the motion. For the reasons set forth below, the motion for summary judgment on the claims for punitive damages will be granted.

I. PREEMPTION

A. Standard of Review

The principal judicial inquiry required by Rule 56, Fed.R.Civ.P., is whether there exists any genuine issue of material fact for resolution. See, Vette Co. v. Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980); Moats v. United States, 564 F.Supp. 1330, 1344 (W.D.Mo.1983). The party opposing the motion must receive the benefit of all reasonable inferences to be drawn from the facts. Fitzgerald v. Williamson, 601 F.Supp. 92, 94 (E.D.Mo.1984), aff'd, 787 F.2d 403 (8th Cir.1986). Summary judgment should be entered only if the movant has established a right to judgment with such clarity as to leave no room for controversy, and the other party is not entitled to recover under any discernible circumstances. See, Poolman v. Nelson, 802 F.2d 304, 307 (8th Cir.1986); Mandel v. United States, 719 F.2d 963, 965 (8th Cir. 1983).
With this standard in mind, this court turns to the issues raised by defendants' motion for summary judgment. This court is aware that similar issues were raised by defendant the Upjohn Company in a virtually identical case, Cynthia K. Hoover, Jill McKinney, et al. v. The Upjohn Company, et al., Civil Action No. 87-0420-CV-W-9. After a thorough discussion, Magistrate Richard H. Ralston denied summary judgment in his order dated February 22, 1988.

B. Statement of the Case

The plaintiffs in these actions allegedly ingested antibiotic drug products known generically as tetracyclines at some time after the defendant manufacturers were required to disseminate a warning about the products. Beginning in 1963, manufacturers were required to inform that use of tetracyclines during tooth development (last trimester of pregnancy, neonatal period, and early childhood) could cause tooth discoloration.
Defendants submitted voluminous evidence supporting their statement that the warning requirement was imposed after extensive expert study by the Food and Drug Administration (FDA) and communication between FDA and the manufacturers. Ultimately a warning statement was devised by FDA, which required manufacturers to issue that statement without deviation in the product packages.
Plaintiffs claim they developed tooth discoloration after ingesting the products despite the warning. They seek actual and punitive damages on claims of negligence, strict liability and failure to provide adequate warning.
Defendants pose several arguments supporting their assertion that plaintiffs' claims are precluded by federal preemption. Acknowledging there is no express preemption, defendants urge that the extent of federal regulation impliedly preempts any state laws, including tort litigation, which concern tetracycline products. Defendants argue that the pervasive regulation by a fully informed agency effectively shows an intent to occupy the field completely, and to preclude any action (other than federal government action) which might be inconsistent or have an inconsistent effect. For example, defendants argue that the manufacturers could not be required by any state to use a warning that was different or broader than the specifically prescribed warning statement which the FDA required to be used without change. The regulations include strict requirements about labeling, and certifying each batch of products which is manufactured.
Defendants argue that manufacturers could not comply with both federal regulation and conflicting state regulation or tort law. To permit individual states' laws to interfere with the federal regulation, defendants *546 argue, would destroy the nationwide and industrywide uniformity which federal regulation was invoked to promote. Conflicting state laws would frustrate the FDA's ability to make decisions, and leave manufacturers trying to conform to the inconsistent findings of each state or jury, defendants argue.
Plaintiffs respond that, if Congress intended to preempt all non-federal regulation, it could say so expresslyas it has done in other instances. They assert that even pervasive regulation does not require preemption, particularly in the area of a state's police powers over health, safety and welfare which historically have been reserved to local governments. Plaintiffs argue that federal regulations set minimum standards which may be below more rigid supplementary requirements of a state. States may regulate further, plaintiffs argue, if they do not conflict directly with federal regulations. Plaintiffs claim that the defendants are urging a sort of immunity from liability for drug manufacturers. Finally, plaintiffs suggest this litigation does not impede the federal regulatory policy but, rather, promotes the policy by showing manufacturers whether they should expand their warnings.

C. Discussion

The doctrine of preemption arises from the Supremacy Clause in Article VI of the United States Constitution:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
The Supreme Court has interpreted this clause to authorize Congress to enact laws under its enumerated powers that preempt state laws governing the same subject. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824). State law can be preempted by federal regulations as well as by federal statutes. See, Hillsborough County, Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted. Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).
State law preemption may be found in different ways. Congressional intent to preempt may be set forth expressly. Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, reh'g denied, 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977). The intent may be implied where a scheme of regulation is so comprehensive in an area as to leave no room for supplemental state legislation. International Paper Co. v. Ouellette, 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987); Hillsborough, supra, 471 U.S. at 713, 105 S.Ct. at 2375; Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Alternately, if Congress has not completely displaced state law in a field, state law is preempted only to the extent it actually conflicts with federal law. Silkwood, supra, 464 U.S. at 248, 104 S.Ct. at 621. Conflict arises when "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc., v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).
A good example of a direct conflict between federal and state regulation can be found in Cosmetic, Toiletry & Fragrance Ass'n Inc. v. Minnesota, 575 F.2d 1256, 1257 (8th Cir.1978) (per curiam). In that case, a Minnesota statute and the FDA required an identical warning in the labeling of pressurized containers with certain chlorofluorocarbon propellants. However, the Minnesota statute required the warning to be placed on the front panel of the product whereas the FDA regulation was *547 interpreted to require the warning on the back panel. There also was a dispute about whether the warning label only on the outside box which enveloped the container, or on the container itself. Id. at 1257; Cosmetic, Toiletry & Fragrance Ass'n, Inc. v. Minnesota, 440 F.Supp. 1216, 1219 (D.Minn.1977), aff'd, 575 F.2d 1256 (8th Cir.1978) (per curiam). Another example can be found in Grocery Manufacturers of America, Inc. v. Gerace, 755 F.2d 993, 1002-1003 (2nd Cir.1985), where compliance with a state labeling regulation would have been a violation of federal regulation. The clear conflict, and physical impossibility of complying with regulations of both state and federal governments, compelled findings of preemption even where none had been stated expressly.
Defendants in this action do not suggest preemption was intended expressly by federal statute or regulation. Rather, defendants argue that the pervasive regulation impliedly preempts state laws and tort theories. Defendants argue that conflicts between state and federal law would defeat the purposes of the federal scheme, so non-federal action must be preempted.
The Second Circuit Court of Appeals summarized the approach to finding preemption in Environmental Encapsulating Corp. v. New York City, 855 F.2d 48, 53 (2nd Cir.1988):
In analyzing any claim of federal preemption, "`the purpose of Congress is the ultimate touchstone.'" Fort Halifax Packing Co. v. Coyne, [482] U.S. [1], 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987) (quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 747 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985)). There is a "presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." Hillsborough, 471 U.S. at 715, 105 S.Ct. at 2376. The historic police powers of the states are not to be found preempted "`unless that was the clear and manifest purpose of Congress.'" Id. (quoting Rath Packing, 430 U.S. [at] 525 [97 S.Ct. at 1309]).
In Hurley v. Lederle Laboratories, 863 F.2d 1173 (5th Cir.1988), plaintiffs raised claims similar to those in this action. In the context of vaccine regulation, the court confronted the effect of federal preemption on traditional state police powers, saying courts should be reluctant to find implicit preemption in that area. The court said, at 1176-1178, FDA regulation does not generally preempt stricter state law standards for medical products, and cited Hillsborough, supra, 471 U.S. at 717-722, 105 S.Ct. at 2377-2380. The court continued, at 1177:
Moreover, this and other federal courts have already ruled that FDA regulation does not preempt the types of state law duties which are the basis of plaintiffs' claims: the duty to warn of product risks, e.g., Osburn v. Anchor Laboratories, Inc., 825 F.2d 908, 911-912 (5th Cir.1987), and the duty not to place unreasonably dangerous products into commerce.
The court observed, at 1176, that the great majority of district courts which have addressed the issue have ruled against preemption. The cases appear in footnote 2, at 1176:
The following district court opinions have found against preemption. Smith v. Wyeth Laboratories, Inc., No. CA-84-2002, slip op. (S.D.W.Va. Aug. 21, 1986); Milam v. Lederle Laboratories Division of American Cyanamid Co., No. CA-4-85-92-K, slip op. (N.D.Tex. Oct. 15, 1986); Jeski v. Connaught Laboratories, Inc., No. A-84-CA-395, slip op. (W.D. Tex. Dec. 18, 1986); MacGillivray v. Lederle Laboratories Division of American Cyanamid Co., 667 F.Supp. 743 (N.D.N.M.1987); Morris v. Parke, Davis & Co., 667 F.Supp. 1332 (C.D.Cal.1987); Knudsen v. Connaught Laboratories, 691 F.Supp. 1346 (M.D.Fla.1987); Martinkovic v. Wyeth Laboratories, 669 F.Supp. 212 (N.D.Ill.1987); Koehler v. Wyeth Laboratories, No. 85-284-C (S.D. Ind. Sept. 8, 1987) [available on WESTLAW, 1987 WL 47831]; Scholl v. Lederle Laboratories and Connaught Laboratories, Inc., No. Civ. 85-409-TUC-RMB, slip op. (D.Ariz. Nov. 25, 1987); Percival *548 v. American Cyanamid Co. d/b/a Lederle Laboratories, No. Civ. 85-2671-P, slip op. (D.Okla. Nov. 25, 1987) [available on WESTLAW, 1987 WL 46954]; Patten v. Lederle Laboratories, 655 F.Supp. 745 (D.Utah 1987); Wack v. Lederle Laboratories, 666 F.Supp. 123 (N.D.Ohio 1987); Graham v. Wyeth Laboratories, 666 F.Supp. 1483 (D.Kan.1987); Foyle v. Lederle Laboratories, 674 F.Supp. 530 (E.D. N.C.1987).
Several state courts have also found no federal preemption: Shepherd v. Lederle Laboratories, No. 85-20330 (Cr.Ct. Broward County, Fla., Feb. 3, 1988); Duncan v. Connaught Laboratories, Inc., No. 86-CVS888 (Sup.Ct. Columbus County, N.C., March 24, 1988); Reed v. Connaught Laboratories, 1426 Civil of 1985, (Court of Common Pleas, Monroe Co., Pa., Dec. 3, 1987)
Although the district court in Abbott v. American Cyanamid, No. 86-0857-A, mem. op., (E.D.Va. March 9, 1987), ruled that federal law preempted state tort remedies for DPT vaccination injuries, the Fourth Circuit recently reversed that decision, using reasoning which closely resembles our own. 844 F.2d 1108 (1988).
The court in Hurley also noted the Supreme Court's reluctance to find implied preemption, even in pervasively regulated areas. The court quoted Mr. Justice Marshal in Hillsborough, supra, 105 S.Ct. at 2377, where he said pervasive regulation by a federal agency is not tantamount to exclusive occupation of the regulated field. Likewise, even the pervasive and rigid regulation under the Atomic Energy Act was sufficient to preempt state tort remedies in Silkwood v. Kerr-McGee Corp., supra.
In his February 22, 1988, order in the Hoover case, Magistrate Ralston said the vast majority of courts which have considered the issue of implied FDA preemption of state tort claims for failure to adequately warn of possible side effects of prescription drugs have rejected the preemption claim. In support of that proposition, Magistrate Ralston listed 15 cases (different from those contained in the Hurley footnote quoted above) decided between 1973 and 1987 by state courts, federal district courts, and federal courts of appeals.
Defendants challenge the applicability here of the cases cited above which concern vaccines, rather than prescription antibiotics such as tetracyclines. Defendants assert that antibiotics are more rigidly regulated than vaccines. Even if that greater regulation could be demonstrated, it would not compel a finding of preemption regarding tetracyclines. Faced with the well-established refusal to find preemption regarding other drugs, the Congress could have expressed its intent to preempt if it wished to do so. Indeed, Congress did express intent to preempt in the area of tobacco regulation, as illustrated by various tobacco cases (upon which defendants also rely). See, 15 U.S.C. §§ 1331 and 1334(b).
Typical of these cases is Cipollone v. Liggett Group, Inc., 789 F.2d 181 (3rd Cir. 1986), cert. denied, 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987), a case which involved labeling and warnings on cigarette packages and did not deal with prescription drugs or FDA regulations. See also, Palmer v. Liggett Group, Inc., 825 F.2d 620, 627 (1st Cir.1987); accord, Stephen v. American Brands, Inc., 825 F.2d 312, 313 (11th Cir.1987). The Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 et seq., prescribes the exact language of warnings on cigarette packages. The cigarette warning cases stand only for the proposition that in enacting the labeling act, Congress intended to preempt common law damage actions for inadequate warning and labeling. In reaching this conclusion, the court in Cipollone noted that the labeling act contains a preemption provision which precludes state legislative action from requiring warnings on cigarette packages which differ from those prescribed in the labeling act. Considering this provision in light of the explicit statement of Congress that the labeling act represents a carefully drawn balance between warning and protecting the interests of the national economy, the court concluded that state common law actions that affect this balance are impliedly preempted.
*549 Defendants note that the FDA regulations also specify a warning which, like the cigarette labeling act, must be used without change. They analogize that specifying the precise wording of a warning for tetracyclines requires preemption just as specifying the cigarette warning compelled a finding of preemption. The difference, of course, is that no explicit intent is manifested in regard to tetracyclines. Congress did not assert that regulations concerning antibiotic drugs were the result of a carefully drawn balance between warning the public and protecting the national economy. Without that statement concerning the careful balancing, there is no basis for inferring an intent to preempt. Such a statement, or some clearcut evidence, or intent to preempt is necessary to overcome the presumption that states retain police powers in matters of health, safety and welfare. Furthermore, if an analogy should be drawn, it would seem prescription antibiotic tetracyclines are more akin to vaccines (no preemption) than to tobacco products (preemption).
To be sure, preemption has been found in a case concerning antibiotic drugs. In Animal Legal Defense Fund v. Provini Veal Corp., 626 F.Supp. 278, 283 (D.Mass.1986), the court found preemption in the field of antibiotic-treated animal feed. In that instance, however, all the regulation concerning antibiotic drugs operated in conjunction with a comprehensive regulatory scheme surrounding the Federal Meat Inspection Act, as amended by the Wholesale Meat Act, 21 U.S.C. §§ 601-680. The combination of thorough regulation of meat production and regulation of antibiotics was sufficient to support a finding of implied preemption in the area of antibiotic-treated feed for animals.
Finally, FDA regulations have been found to be minimum standards on the issue of adequacy of product warnings. See, Stromsodt v. Parke-Davis & Co., 257 F.Supp. 991, 997 (D.N.D.1966), aff'd, 411 F.2d 1390 (8th Cir.1969) (defendant has a duty to warn of dangers of which it knew or should have known in the exercise of reasonable care); accord, Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652, 658 (1st Cir.1981) (manufacturer's receipt of additional information creates duty to do more than satisfy existing FDA existing uniform labeling requirements); Bristol-Myers v. Gonzales, 561 S.W.2d 801, 804 (Tex.1978) (absence of recommendation of the proper frequency of drug use creates inadequate warning under common law theory even though instructions had prior FDA approval). See also, O'Gilvie v. International Platex, Inc., 821 F.2d 1438, 1442-1443 (10th Cir.1978); See generally, 3B Frumer & Friedman, Products Liability § 50.03(1)(C)(i) (1982). Support for this finding can be found in the FDA regulations as well. In 1965, about two years after the warning label was required, the FDA regulations were amended to insert 21 C.F.R. §§ 130.9(d) and (e) which provide:
(d) Changes of the following kinds proposed in supplemental new drug applications should be placed into effect at the earliest possible time:
(1) The addition to package labeling, promotional labeling, and prescription drug advertising of additional warning, contraindication, side-effect, and precaution information.
* * * * * *
(e) It will be the policy of the Food and Drug Administration to take no action against a drug or applicant solely because changes of the kinds described in paragraph (d) of this section are placed in effect by the applicant prior to his receipt of a written notice of approval of the supplemental new drug application....
Because these sections allow a manufacturer to make additions to or changes in its warning prior to FDA approval, they create serious doubt that implied preemption exists as to the adequacy of warnings contained with prescription drugs. The fact that 21 C.F.R. § 146.2(b)(3) (1967) required prior FDA approval for antibiotic labeling changes is not dispositive on the issue of preemption. There is nothing in Section 146 which mandates specific warning language or removes antibiotics from the regulations applicable to all prescription drugs *550 included under §§ 130.9(d) and (e). At the very minimum it can be said that a common law duty to warn adequately, in the realm of antibiotic drugs, translates as a duty to seek FDA approval of additional warnings. To find otherwise would allow a manufacturer, having learned of additional side effects or precautions, to escape liability for injuries resultant therefrom by remaining silent and relying on lack of prior FDA approval.
The New Jersey Supreme Court in Feldman v. Lederle Laboratories, 97 N.J. 429, 479 A.2d 374, 383 (1984) found §§ 130.9(d) and (e) directly applicable to a tetracycline manufacturer in an inadequate warning case and noted that "[i]t would seem anomalous for the FDA to have prevented a drug manufacturer from advising the public immediately of a newly discovered danger while waiting for FDA approval." 479 A.2d at 390. This rationale has been adopted in other cases dealing with a duty to warn of possible side effects associated with prescription antibiotic drugs. See, Salmon v. Parke-Davis & Co., 520 F.2d 1359 (4th Cir.1975); Bristol-Myers v. Gonzales, supra.

D. Conclusion

This evolution of case law which leads to the conclusion in Feldman is persuasive enough to find that preemption does not bar state common law tort actions of failure to warn adequately. Certainly a jury could find defendants might have taken other actions supplementing and complementing the FDA warning requirements, and such actions need not be inconsistent or conflicting with the federal requirements. For example, writing additional letters to doctors, distributing brochures to consumers, and posting notices at obstetrics and pediatric clinics all perhaps could have been done without violating FDA requirements or frustrating FDA's policy and purpose. Such conditions lack the sort of direct conflict (such as that in Cosmetic, Toiletry, supra, and Grocery Manufacturers, supra) needed to find implied preemption. Upon finding that supplemental warning actions were not precluded by preemption, a genuine issue of fact remains concerning what, if anything, defendants should have done to warn adequately. Therefore, summary judgment cannot be granted on the grounds of preemption.

II. PUNITIVE DAMAGES

A. Statement of the Case

Defendants argue primarily that discovery has revealed no evidence which would support claims for punitive damages. Plaintiffs respond essentially that they should be permitted to submit evidence supporting their claims, and that the question of the sufficiency of the evidence should be left for juries to decide. Plaintiffs did not set forth any facts or evidentiary material in support of their implication that evidence exists to support their claims for punitive damages.

B. Standard of Review

Rule 56(c), Fed.R.Civ.P., provides that summary judgement shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law: In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Inland Oil and Transport Co. v. United States, 600 F.2d 725, 727-728 (8th Cir.), cert. denied, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

C. Discussion

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir.1979); United States v. Porter, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a *551 whole." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which the party will bear the burden of proof at trial. Id., 106 S.Ct. at 2553.
The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on files, together with affidavits, if any, the absence of genuine issues of material fact. However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. Id. (emphasis added).
The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. Id. A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleadings to get to a jury without any significant probative evidence tending to support the complaint. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The evidence favoring the nonmoving party must be more than "merely colorable." The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. Id. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Id., 106 S.Ct. at 2512.
By filing their complaints, plaintiffs undertook the burden to prove their claims of punitive damages. In their joint motion for summary judgment, defendants challenged plaintiffs' ability to do so. Such a challenge is the essence of a motion for summary judgment. Defendants did not submit any evidence to show plaintiffs could not prove entitlement to punitive damages. Indeed, that would be difficult because it would entail evidence of a negative, i.e., evidence of the non-existence of proof. Accordingly, as discussed above, defendants are not required to submit evidence in support of a motion for summary judgment. The only basis for defendants' motion is that such evidence does not exist. In light of Rule 11, Fed.R.Civ.P., this court must presume that defendants have made reasonable inquiry and somehow determined that insufficient evidence exists to support the claims for punitive damages.

D. Conclusion

Rule 56(c) provides for, and indeed requires, the nonmoving parties to demonstrate they may be able to carry their burden of proof. As discussed above, parties who are faced with a motion for summary judgment are obligated to come forth with facts and evidence to meet the challenge. Nevertheless, plaintiffs have not submitted any facts which, together with all reasonable inferences and viewed in the light most favorable to them, could possibly entitle them to a verdict on their punitive damages claims. If plaintiffs were to present as much evidence to a jury as they presented in their response to the motion, the law would require a verdict to be directed in favor of defendants.
Plaintiffs cited cases concerning what quantum of proof is necessary to be awarded punitive damages. However, that body of law is irrelevant until plaintiffs produce at least a morsel of evidence on the issue. Inasmuch as plaintiffs have produced no facts or evidence whatsoever, a discussion concerning the amount of required evidence is unnecessary. Plaintiffs were required to provide some factual basis to support their claims for punitive damages. Certainly not much evidence would be necessary if, together with reasonable inferences and viewed in the light most favorable *552 to plaintiffs, it could create a genuine issue of material fact. Plaintiffs were bound to produce something to maintain their claims, but produced nothing.
It is
ORDERED that the joint motion (document 5227), filed by defendants on July 15, 1988, for summary judgment on the grounds of preemption is denied with regard to each of the above-styled cases (83-0394, 85-1577, 85-1294, 85-1288, 83-0432, 85-1290, 85-1291, 85-1296, 83-0801, 84-1062 and 83-0393). It is further
ORDERED the defendants' joint motion (document 5212), filed July 15, 1988, for summary judgment on the plaintiffs' claims for punitive damages, is granted. It is further
ORDERED that summary judgment is granted on the claims of punitive damages in favor of defendants and against plaintiffs in the above-styled cases (83-0394, 85-1577, 85-1294, 85-1288, 83-0432, 85-1290, 85-1291, 85-1296, 83-0801, 84-1062 and 83-0393).