NO. 12-07-00244-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


DORRIS DeGRATE AND
§
 APPEAL FROM THE 241ST

FRENCHELLE DeGRATE,

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF


EXECUTIVE IMPRINTS, INC.,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

OPINION


 Frenchelle DeGrate and his wife, Dorris DeGrate (collectively the "DeGrates"), appeal the
trial court's summary judgment entered in favor of Appellee Executive Imprints, Inc. In one issue,
the DeGrates argue that the trial court erred in granting Executive Imprints' no evidence motion for
summary judgment. We affirm.


Background

 On January 20, 2001, Ms. DeGrate lit a gel candle allegedly marketed by Executive Imprints,
but manufactured by another entity. After allowing the candle to burn for approximately one hour,
Ms. DeGrate blew on the flame in an attempt to extinguish it. Rather than being snuffed out,
however, the size of the candle's flame increased dramatically. Ms. DeGrate reacted by dropping
the candle into her kitchen sink and, as a result of her contact with the hot gel, suffered burns to her
hands, her eyelid, and her body generally.

 The DeGrates filed suit against Executive Imprints and others contending that Executive
Imprints was liable to Ms. DeGrate under theories of negligence, negligence per se, gross negligence,
design defect, manufacturing defect, marketing defect, and breach of express and implied warranties. 
The DeGrates further alleged that Executive Imprints was liable to Mr. DeGrate for his loss of
consortium. After adequate time for discovery had passed, Executive Imprints filed a no evidence
motion for summary judgment as to all of the DeGrates' claims. The DeGrates responded, (1)
 arguing
that more than a scintilla of evidence had been presented in support of their claims that Executive
Imprints was negligent and that the candle was defectively designed and defectively marketed. 

 In support of their response, the DeGrates relied heavily on the affidavit and report of Harold
Zeliger, Ph.D., a chemist. In his affidavit, Dr. Zeliger stated, in pertinent part, as follows: 


 1. The candle was dangerous and defective for the following reasons: (a) Its propensity to form
a large hot molten liquid layer when burning [and] (b) [w]hen burning, the flame and the top part of
the container were sufficiently hot, i.e., above the flash point of the candle, to result in the ignition and
eruption of the molten liquid when it splashed against the hot container walls and/or the candle flame. 


 2. A method of producing scented candles is well known and established. Paraffin wax and
other waxes, (beeswax, for example), burn safely without producing hot liquid layers that can splash
and erupt.


 3. The manufacturer could have tested the candle under actual use conditions to ascertain the
dangers associated with the candle. Such testing would have readily revealed the problems with the
candle that injured Ms. Degrate.



Dr. Zeliger's affidavit testimony supplemented the opinions he provided by way of his report, which
was also part of the summary judgment record. Dr. Zeliger's report stated, in pertinent part, as
follows:


 The following opinions are offered to a reasonable degree of scientific certainty:

 1. The fact that Ms. DeGrate's first blow did not extinguish the flame indicates that
the fire was a hot one. This is consistent with the inches high flame reported by Ms.
DeGrate.


 2. The eruption that occurred when the second extinguishing attempt was made further
supports the hot fire opinion.


 3. The flash point of the candle was measured at 320 degrees F. This is lower than the
greater than 340 degrees F flash point on the Penreco MSDS. The lower flash point
can be attributed either to addition of lower flash additives to the basic gel material,
to a bad batch of gel or both.


 4. The eruption of fire in the glass container is due to the splashing of the molten gel
onto the hot surface of the glass above the liquid line when Ms. DeGrate attempted
to blow the candle out. The glass above the liquid line was in the area of the high
flame and subject to being heated above the 320 degree flash point. Upon contact
with the hot glass, the liquid vaporized, was subjected to a temperature that
exceeded the flash point and ignited spontaneously.


 5. The warning label on the gel candle failed to warn Ms. DeGrate that an eruption
such as that she was subjected to could occur. The directions for use did not warn
her of the potential for eruption when the candle was being moved.


 6. The manufacturer and suppliers of the various components failed to properly test
the gel candle before its sale. Flash point testing alone is insufficient to establish
safety.


 Subsequently, the trial court granted Executive Imprints' no evidence motion for summary
judgment. Thereafter, the trial court severed the DeGrates' claims against Executive Imprints from
the remaining claims against the other defendants. This appeal followed.

 

Standard of Review

 After adequate time for discovery, a party, without presenting summary judgment evidence,
may move for summary judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden of proof at trial. 
Tex. R. Civ. P. 166a(i). The motion must state the elements as to which there is no evidence. Id. 
The court must grant the motion unless the respondent produces summary judgment evidence raising
a genuine issue of material fact. Id. The movant need not produce any proof in support of its no
evidence claim. See id.; see also Judge David Hittner and Lynne Liberato, Summary Judgments in
Texas, 34 Hous. L. Rev. 1303, 1356 (1998). The motion must be specific in alleging a lack of
evidence on an essential element of a cause of action, but need not specifically attack the evidentiary
components that may prove an element of the cause of action. See Denton v. Big Spring Hosp.
Corp., 998 S.W.2d 294, 298 (Tex. App.-Eastland 1999, no pet.). Once a no evidence motion has
been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth
evidence that raises a fact issue on the challenged evidence. See Macias v. Fiesta Mart, Inc., 988
S.W.2d 316, 316-17 (Tex. App.-Houston [14th Dist.] 1999, no pet.). A no evidence motion is
properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to
raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which
the nonmovant would have the burden of proof at trial. See Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would
enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of
evidence exists. See Havner, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the
evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal
effect is that there is no evidence. See Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).

 On appeal, we will uphold a no evidence summary judgment only if the summary judgment
record reveals no evidence of the challenged element, i.e., (a) there is a complete absence of
evidence as to the challenged element; (b) the evidence offered to prove the challenged element is
no more than a mere scintilla; (c) the evidence establishes conclusively the opposite of the
challenged element; or (d) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove the challenged element. See Taylor-Made Hose, Inc. v.
Wilkerson, 21 S.W.3d 484, 488 (Tex. App.-San Antonio 2000, pet. denied) (citing Robert W.
Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362-63
(1960)).

 In determining whether an appellant has raised more than a scintilla of evidence regarding
the grounds on which a no evidence motion for summary judgment was based, we are limited to the
summary judgment proof produced in the response. See Webb v. Robins, No. 03-07-00686-CV,
2008 WL 2777399, at *5 (Tex. App.-Austin July 17, 2008, no pet. h.). When presenting summary
judgment proof in response to a no evidence motion, a party must specifically identify the supporting
proof on file that it seeks to have considered by the trial court. See Arredondo v. Rodriguez, 198
S.W.3d 236, 238 (Tex. App-San Antonio 2006, no pet.); see also Tex. R. Civ. P. 166a(i) cmt. ("To
defeat a motion made under paragraph (i), . . . [a nonmovant's] response need only point out
evidence that raises a fact issue on the challenged elements."). Referencing attached documents only
generally does not relieve a respondent of directing the trial court to where in such documents the
issues set forth in the response are raised. See Arredondo, 198 S.W.3d at 238-39. Neither this court
nor the trial court is required to wade through a voluminous record to marshal a respondent's proof. 
Id. at 238. Furthermore, we are not free to search the entire record, including materials not cited to
or relied on by the trial court. Id. at 239. Likewise, on appeal, an appellant has a duty to show that
the record supports its contention. See Tex. R. App. P. 38.1(h).


Negligence Per Se, Manufacturing Defect, Breach of Implied and


Express Warranties, and Gross Negligence



 As part of their sole issue, the DeGrates argue that the trial court erred in granting summary
judgment on their causes of action of negligence per se, manufacturing defect, breach of implied and
express warranties, and gross negligence. Executive Imprints' no evidence motion for summary
judgment expressly requested summary judgment as to these claims in compliance with Rule
166a(i). In their response, the DeGrates failed to raise any challenge to Executive Imprints' no
evidence motion with regard to the contested elements of these claims.

 We iterate that when presenting summary judgment proof in response to a no evidence
motion for summary judgment, a party must specifically identify the supporting proof on file that
it seeks to have considered by the trial court. See Arredondo, 198 S.W.3d at 238. In the instant
case, since the DeGrates did not include any argument or identify any supporting proof pertaining
to the challenged elements of their claims of negligence per se, manufacturing defect, breach of
implied warranties, breach of express warranties, manufacturing defect, and gross negligence, we
hold that the trial court properly granted Executive Imprints' no evidence motion for summary
judgment as to those claims. Therefore, to the extent that the DeGrates' sole issue pertains to their
causes of action of negligence per se, manufacturing defect, breach of implied and express
warranties, and gross negligence, it is overruled.


Negligence


 The DeGrates further contend as part of their sole issue that the trial court erred in granting
summary judgment on their negligence cause of action. In its motion, Executive Imprints contended
that there was no evidence that it owed a duty to warn the DeGrates of any risk or risk avoidance
measure associated with the candle in question, that it breached any duty to the DeGrates in the
design, manufacturing, marketing, distributing, and placing into the stream of commerce the candle
in question, or that the breach of any duty by Executive Imprints proximately caused the DeGrates'
alleged injuries. 

 The DeGrates argue that the opinion of Dr. Zeliger contains more than a scintilla of evidence
with regard to the existence of a duty owed to the DeGrates by Executive Imprints. (2)
 Yet, the
DeGrates' brief makes only general reference to the evidence they contend supports their negligence
cause of action, and, therefore, does not meet the standard set forth by Texas Rule of Appellate
procedure 38.1(h). Nonetheless, even if we assume that the DeGrates' briefing in this case rises to
the minimum level required by Rule 38.1, the outcome would not differ. 

 To prevail on a claim of negligence, a plaintiff must prove a legal duty owed to the plaintiff
by the defendant, breach of that duty, and damages to the plaintiff proximately caused by the breach
of the duty. Lucas v. Tex. Indus., Inc., 696 S.W.2d 372, 376-77 (Tex. 1984). To prove an action
for negligence, the plaintiff must establish the defendant had a legal duty. See Graff v. Beard, 858
S.W.2d 918, 919 (Tex. 1993); see also Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 591 (Tex.
1986) (a manufacturer, as well as all suppliers of a product, has a duty to inform users of hazards
associated with the use of its products). A duty is a legal obligation that requires the defendant to
conform to a certain standard of conduct. See Way v. Boy Scouts of Am., 856 S.W.2d 230, 233
(Tex. App.-Dallas 1993, writ denied). Every person has a duty to exercise reasonable care to avoid
a foreseeable risk of injury to others. Lukasik v. San Antonio Blue Haven Pools, Inc., 21 S.W.3d
394, 403 (Tex. App.-San Antonio 2000, no pet.). The existence of duty is a question of law for the
court to decide from the facts surrounding the occurrence in question. Greater Houston Transp. Co.
v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990); Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 309
(Tex. 1983). 

 To determine whether a duty exists under common law, we apply a risk-utility balancing test. 
See Read v. Scott Fetzer Co., 990 S.W.2d 732, 736 (Tex. 1998). We consider several interrelated
factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility
of the actor's conduct, the magnitude of the burden of guarding against the injury, and the
consequences of placing the burden on the defendants. See Bird v. W.C.W., 868 S.W.2d 767, 769
(Tex. 1994). When these facts are balanced, the most important factor to consider is the
foreseeability of the risk. See Tex. Home Mgmt. v. Peavy, 89 S.W.3d 30, 36 (Tex. 2002). The test
for foreseeability is what a person should, under the circumstances, reasonably anticipate as a
consequence of her conduct. See Foster v. Denton ISD, 73 S.W.3d 454, 465 (Tex. App.-Fort Worth
2002, no pet.). Foreseeability alone, however, is not enough to create a duty. Golden Spread
Council v. Akins, 926 S.W.2d 287, 290-91 (Tex. 1996). Additionally, we consider (1) whether one
party had a superior knowledge of the risk, see Graff, 858 S.W.2d at 920, (2) whether a party had
a right to control the conduct of another, id., (3) whether societal changes require the recognition of
new duties, see Clark, 668 S.W.2d at 310, (4) whether the creation of a new duty would be in
conflict with existing statutory law, see Thapar v. Zezulka, 994 S.W.2d 635, 639-40 (Tex. 1999),
and (5) whether there are countervailing concerns that would support or hinder the recognition of
a new duty, see Bird, 868 S.W.2d at 769.

 Anticipation of consequences is a necessary element in determining whether a particular act
or omission is actionably negligent. See Houston Lighting & Power Co. v. Brooks, 161 Tex. 32,
336 S.W.2d 603, 606 (Tex. 1960). In other words, though a person's act or omission may have
caused injury or damage, the person is not to be held responsible or negligent if he or she could have
foreseen the harmful occurrence or situation. See Ortega & Sons v. El Paso Elec. Co., 381 S.W.2d
147, 149 (Tex. App.-El Paso 1964, no writ). Actual anticipation is not the test; the test is what one
should, under the circumstances, reasonably anticipate as consequences of his conduct. Id. 
Moreover, foreseeability does not require the actor to anticipate the specific incident or precise
manner of injury, but only requires that he reasonably anticipate the general character of the injury. 
Lukasik, 21 S.W.3d at 403-04.

 In the case at hand, the DeGrates' sole support for their response to Executive Imprints'
motion with regard to their negligence claim is Dr. Zeliger's expert opinion testimony. However,
Dr. Zeliger's opinion testimony is less than thorough. Dr. Zeliger's testimony does not support that
Executive Imprints had knowledge of the risks associated with the candle or controlled the actions
of the manufacturer. In fact, Dr. Zeliger provides no support for the proposition that the suppliers
of the candle, which would include Executive Imprints, failed to test the candle. Moreover, Dr.
Zeliger offers no testimony that a supplier of such a candle typically conducts such testing. Based
on our review of Dr. Zeliger's testimony, we cannot uncover even a scintilla of evidence concerning
knowledge of risk, foreseeability, the likelihood of injury, the social utility of the conduct at issue,
or any other evidence that might appropriately be employed in risk-utility analysis. Therefore, since
the DeGrates failed to set forth a scintilla of evidence supporting the existence of a legal duty owed
them by Executive Imprints, we hold that the trial court properly granted Executive Imprints' no
evidence motion for summary judgment as to the DeGrates' negligence cause of action. To the
extent that the DeGrates' sole issue relates to their allegations of negligence, it is overruled.


Design Defect


 As part of their sole issue, the DeGrates further contend that the trial court erroneously
granted summary judgment in favor of Executive Imprints on their design defect cause of action. 
To prevail on a design defect claim, a plaintiff must establish that (1) a safer alternative design
existed and (2) the design defect was a producing cause of the personal injury for which the claimant
seeks recovery. See Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a) (Vernon 2005). "Safer
alternative design" means a product design other than the one actually used that in reasonable
probability (1) would have prevented or significantly reduced the risk of the claimant's personal
injury without substantially impairing the product's utility and (2) was economically and
technologically feasible at the time the product left the control of the manufacturer or seller by the
application of existing or reasonably achievable scientific knowledge. Id. § 82.005(b). Generally,
these requirements necessitate competent expert testimony and objective proof that a defect caused
the injury. Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 137 (Tex. 2004). Conclusory
statements by an expert are not competent evidence and are insufficient to support or defeat
summary judgment. Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997).

 Here, the DeGrates argue that Dr. Zeliger's expert opinion testimony supports the proposition
that the candle was defectively designed. (3)
 But similar to its support of the DeGrates' response
pertaining to their negligence claim, Dr. Zeliger's opinion testimony sets forth no basis of support
for his opinion that the gel of the candle spontaneously ignited, that the glass of the candle was
above the flash point for the gel, that a wax candle would not create a pool of hot liquid, or that Ms.
DeGrates' injuries were caused by a defect in the candle. Thus, we hold that Dr. Zeliger's
conclusory statements regarding a design defect are insufficient to defeat Executive Imprints' no
evidence motion for summary judgment. See Montgomery, 951 S.W.2d at 466. As such, to the
extent that the DeGrates' sole issue relates to their design defect cause of action, it is overruled.


Marketing Defect


 As part of their sole issue, the DeGrates further contend that the trial court erroneously
granted Executive Imprints' no evidence motion for summary judgment with regard to their
marketing defect cause of action. To prevail on a marketing defect claim, a plaintiff must prove that
the defendant knew or should have known of a potential risk of harm presented by the product, but
marketed it without adequately warning of the danger or providing instructions for its safe use. See
Bristol-Myers Co. v. Gonzales, 561 S.W.2d 801, 804 (Tex. 1978); Ethicon Endo-Surgery, Inc. v.
Meyer, 249 S.W.3d 513, 516 (Tex. App.-Fort Worth 2007, no pet.). To support such a claim, the
plaintiff must present evidence that (1) a risk of harm is inherent in the product or may arise from
the intended or reasonably anticipated use of the product, (2) the product supplier actually knew or
should have reasonably foreseen the risk of harm at the time the product was marketed, (3) the
product possessed a marketing defect, (4) the absence of the warning or instructions rendered the
product unreasonably dangerous to the ultimate user or consumer of the product, and (5) the failure
to warn or instruct constituted a causative nexus in the product user's injury. 

 In its no evidence motion for summary judgment, Executive Imprints contended that the
DeGrates presented no evidence (1) that the alleged risk of harm was inherent in the candle or might
arise from the intended and reasonably anticipated use of the candle, (2) that Executive Imprints
actually knew or should have known of an alleged risk of harm at the time the candle was marketed,
(3) that the candle contained a marketing defect, (4) that the absence of a warning rendered the
candle unreasonably dangerous, or (5) that Executive Imprints' failure to warn was a producing
cause of the DeGrates' damages. 

 Once again, the DeGrates' sole support underlying their response was Dr. Zeliger's opinion
testimony. However, Dr. Zeliger's testimony failed to address each challenged element of the
DeGrates' marketing defect claim. Neither Dr. Zeliger's affidavit testimony nor the opinions set
forth in his expert report support that the absence of a warning rendered the candle unreasonably
dangerous or that such was a producing cause of Ms. DeGrate's injuries. Therefore, we hold that
the trial court properly granted Executive Imprints' no evidence motion for summary judgment on
the DeGrates' marketing defect cause of action. To the extent that the DeGrates' sole issue relates
to their marketing defect claim, it is overruled.


Mr. DeGrate's Loss of Consortium Claim


 The DeGrates further argue as part of their sole issue that the trial court improperly granted
summary judgment on Mr. DeGrate's loss of consortium claim. When a loss of consortium claim
is derived from an injury to the spouse, the claim is derivative, and thus, must fail if the injured
spouse's claims against the defendant fails. See Brocken v. Entergy Gulf States, Inc., 197 S.W.3d
429, 440 (Tex. App.-Beaumont 2006, no pet.). Because Mr. DeGrate's loss of consortium claim is
based on the injuries suffered by Ms. DeGrate and, further, because we have held that the trial court
properly granted summary judgment on all claims made by Ms. DeGrate against Executive Imprints,
it follows that the trial court properly granted summary judgment as to Mr. DeGrate's claim for loss
of consortium. Therefore, to the extent that the DeGrates' sole issue relates to Mr. DeGrate's loss
of consortium cause of action, it is overruled.



Disposition


 Having overruled the DeGrates' sole issue, we affirm the trial court's judgment.



 BRIAN HOYLE 

 Justice





Opinion delivered August 6, 2008.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.



























(PUBLISH)
1. The DeGrates' response also addressed the motions for summary judgment filed by two other defendants
not parties to this appeal.

2. The entirety of the DeGrates' briefing on the issue of negligence reads as follows:


 In regard to [the DeGrates'] allegation that [Executive Imprints] engaged in conduct constituting
negligence, [the DeGrates] would show that the summary judgment testimony of [the DeGrates'] expert
[presented evidence of] the existence of a duty owed to the [DeGrates], a clear breach of that duty and
damages resulting therefrom that were the proximate cause thereof.

3. The DeGrates have again made a cursory argument in support of their contention that summary judgment
was not proper with regard to their design defect claim. See Tex. R. App. P. 38.1(h). The DeGrates' briefing of this
issue reads, in its entirety, as follows:


 Under the doctrine of strict product liability, Appellants showed through the tendered summary
judgment evidence that the candle was of a defective design since it was without a reasonable alternative
design, as a fundamental element, marketed, manufactured and was unsafe for its purposes at the time it left
control of Appellee and was sold posing an unreasonable risk factor for consumers.