**AIR SHIELDS, INC. and Southmore Hospital and Clinic, Inc., Appellants,**

v.

**Sherry SPEARS, Individually and as Next Friend of Russell Alan Spears, a Minor, Appellee.**

No. 6026.

Court of Civil Appeals of Texas, Waco.

Oct. 18, 1979.

Rehearing Denied Nov. 29, 1979.

Donald B. McFall and Richard A. Sheehy, Butler, Binion, Rice, Cook & Knapp, Houston, for Southmore Hospital and Clinic, Inc.

Donald R. Hallmark and Susan Crowley, Boswell, O'Toole, Davis & Pickering, Houston, for Air Shields, Inc.

Jim M. Perdue, Andrew L. Todesco and J. Richard Cheney, Miller, Gann & Perdue, Houston, for appellee.

E. P. Dee, Houston, guardian ad litem.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendants Air Shields and Southmore Hospital from $1,173,334. judgment against them in favor of minor plaintiff Russell Alan (Rusty) Spears.

Sherry Spears as next friend of her minor son Rusty Spears sued Air Shields and Southmore for damages resulting from permanent blindness sustained by the minor plaintiff as a result of medical care rendered following his birth on April 27, 1970. Plaintiff had previously settled with the attending physicians for $100,000., expressly reserving his claims against all others.

Plaintiff alleged: Rusty was born in Southmore Hospital on April 27, 1970; was premature; of 32 weeks gestation period; weighed 2 pounds 3 ounces; that following birth he was placed under the care of Dr. Rothenberg who was covering for Dr. Doncaster who was out of town; that Rusty was immediately placed by the hospital personnel in an incubator which was designed, manufactured and sold by Air Shields; that the care of the infant remained in the hands of Dr. Rothenberg and the personnel of Southmore Hospital through May 5, when Dr. Doncaster returned; while in the incubator from April 27 to May 6, Rusty was administered oxygen of 32% to 40% on a continuous basis; resulting in his developing retrolental fibroplasia (RLF) which rendered him totally and permanently blind. Plaintiff further alleged: the amount and duration of oxygen administered through the incubator was determined by the physician, nurses and technicians in charge of his care, and in order to safely use the incubator they had to rely on their training as well as information supplied by Air Shields with the incubator; the incubator saves the life of many prematurely born infants by providing them supplemental oxygen, but supplemental oxygen can cause RLF and blindness in the premature infant; it was formerly believed that oxygen was safe if kept below 40%; but research in 1967 and 1968 determined there was no safe percent;

and that duration of exposure was also a factor in bringing about RLF; Air Shields sold the incubator to Southmore in 1968; Air Shields knew as of 1967 or 1968 that oxygen concentrations of 30% to 40% could and would cause RLF if maintained for a sufficient period of time; and knew that infants being placed in incubators were developing RLF and being blinded; yet Air Shields failed and neglected to advise purchasers and users of its incubators of these facts. Plaintiff further alleged: Southmore through its medical staff knew of the foregoing but failed to adopt any procedure as a part of its nursing or pediatric unit to insure that no standing order for oxygen in quantities of 32% to 40% were written or permitted to continue in effect in the absence of respiratory difficulty of the infant.

Plaintiff alleged Air Shields' failure to provide warning and Southmore's failure to have proper procedures were causes of Rusty's contraction of RLF, blindness and damage.

Air Shields filed third party action against Drs. Rothenberg and Doncaster alleging the doctors were well aware of the risks and benefits from the administration of oxygen of various concentrations and for various durations to a premature infant, and that their negligence caused the minor plaintiff's blindness and damage.

Trial was to a jury pertinent findings of which are summarized as follows:

3) Air Shields was negligent in failing to furnish with its incubators appropriate warnings relating to the risks of the giving of supplemental oxygen.

4) Such negligence was a proximate cause of Rusty Spears' blindness.

5) Southmore Hospital was negligent in its policies and procedures in 1970 regarding the administration of supplemental oxygen to premature infants.

6) Such negligence was a proximate cause of Rusty Spears' blindness.

9) Dr. Rothenberg was negligent in his diagnosis and/or medical care and treatment of Rusty Spears after his birth.

10) Such negligence was a proximate cause of the blindness of Rusty Spears.

11) Awarded $100,000. for special training and education for Rusty Spears in the future until age 18.

12) a) Awarded $100,000. for mental suffering and physical disfigurement in the past.

b) Awarded $900,000. for mental suffering and physical disfigurement in the future.

13) a) Awarded $500,000. for loss of future earnings.

b) Awarded $10,000. for loss of ability to care for and manage his own affairs in the past.

c) Awarded $250,000. for loss of ability to care for and manage his own affairs in the future.

The trial court disregarded the jury's answer of $100,000. for Rusty's special education on the basis such damages could only be recovered by the parent who was barred by limitations. The court further reduced the award ($1,760,000.) by ⅓ on the basis of the jury's findings of negligence against Dr. Rothenberg, and rendered judgment for plaintiff for $1,173,334. jointly and severally against Air Shields and Southmore. The judgment further set the fee of the Guardian Ad Litem, who was appointed by the court to represent Rusty, at $15,000. and taxed same as costs, and assessed all costs jointly and severally against Air Shields and Southmore.

Both Air Shields and Southmore Hospital appeal.

### Air Shields' Appeal

Air Shields appeals on 67 points which we summarize as 7 principal contentions.

Contention 1 asserts there is no evidence and/or insufficient evidence to support the jury's answers to Issues 3 and 4, and that such answers are against the great weight and preponderance of the evidence.

Issues 3 and 4 found Air Shields negligent in failing to furnish with its incubators warnings relative to the risks of giving supplemental oxygen, and that such was a proximate cause of Rusty Spears' blindness.

The incubator was manufactured and sold to Southmore in 1968. The incubator provides an environment for a premature infant. It controls the temperature, the humidity, and permits oxygen to be either at room air concentrations (about 20%) or increased. The incubator has an oxygen limiter, which prevents the concentration of oxygen from exceeding 40% unless a red flag device on the incubator is raised.

Rusty Spears was born April 27, a premature infant (28 to 32 weeks gestation instead of the normal 40 weeks), and weighed 2 pounds 3 ounces. The incubator and supplemental oxygen permit many premature infants to live who would otherwise die, but too much oxygen causes RLF and blindness in the infant. Formerly less than 40% oxygen was believed safe, but in 1967 or 1968 Air Shields learned there was no safe level and that duration of exposure to oxygen as well as concentration was a factor in causing RLF. Air Shields provided a brochure containing instructions for the safe operation and use of its incubator to each purchaser, but nowhere in the instructions is there a reference to RLF or to the safety, or non safety, of any particular concentration of oxygen, or duration of exposure, nor was any warning placed on the incubator itself. Air Shields expected its brochure would be read by all nursing supervisors, attending physicians and all users of the incubator. There is evidence Air Shields knew that many users of its incubators believed oxygen concentrations of less than 40% were safe and could be given routinely without clinical need. There is evidence that it is both feasible and appropriate for the manufacturer to provide, in its manual or on the machine, medical facts and information relating to the proper use of the machine, consistent with the medical facts as they were known, to insure the machine would not be used in a manner to produce RLF. There is evidence that RLF is usually caused by giving a premature infant oxygen; that excessive oxygen is a significant factor in causing RLF; that oxygen such as received by Rusty would be calculated to produce RLF; that Rusty's blindness was caused by exposure to oxygen;

that Rusty's blindness was caused by the oxygen administered during the first days of his life.

And there is evidence a manufacturer is uniquely situated to appreciate the medical risks inherent in the use of its machine; that warnings on medical appliances can act as a reminder to the doctor or hospital; they can tell them something they do not know; or stimulate a further inquiry. Dr. Rothenberg testified when presented with a warning similar to one later given by Air Shields and similar to one proposed by Dr. Hyman: "Well I certainly wouldn't have ignored a message like that", and would have adhered to or at least looked into the matter further.

■ Every manufacturer has a duty to warn of dangers in the use of its product. *Bristol-Myers Co. v. Gonzales*, Tex., 561 S.W.2d 801; *Crocker v. Winthrop Labs.*, Tex., 514 S.W.2d 429; *Bituminous Cas. Corp. v. Black & Decker Mfg. Co.*, (Dallas, Tex.Civ.App.) NRE, 518 S.W.2d 868.

■ Proximate causation may be established by circumstantial evidence. *Farley v. M M Cattle Co.*, Tex., 529 S.W.2d 751. The jury is the judge of the facts and circumstances proven and may draw reasonable inferences and deductions from the evidence. *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273. The question of proximate causation is one for the jury to determine from all the facts and circumstances proved, and broad latitude is allowed jurors to infer proximate cause from the circumstances surrounding an event. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792.

■ We think the evidence ample to sustain the jury's answers to Issues 3 and 4, and that such findings are not against the great weight and preponderance of the evidence.

■ Contention 2 asserts the trial court erred in permitting plaintiffs' attorney to question the witness Andreasen as to whether other infants placed in Air Shields' incubators had developed RLF.

Counsel for plaintiffs asked the witness Andreasen, an employee of Air Shields, whether other infants placed in Air Shields incubators had developed RLF. Air Shields moved for a mistrial on grounds the question violated its Motion in Limine which the court had granted and which forbade the mentioning of "other claims made against [Air Shields] or has ever been involved in any other litigation besides the instant suit * * * ".

The trial court instructed the jury the question could be considered only insofar as it might have a bearing on Air Shields' notice, but would not be considered for the truth of the matter.

We think the evidence admissible, limited by instruction to the question of notice, and later introduced without objection from a different witness.

■ Contention 3 asserts the trial court erred in allowing the witness Hyman to testify that it was appropriate in 1968 to put a warning in the incubator instruction manual as to the risks of RLF; and in allowing him to testify as to a suggested form of warning.

Dr. Hyman is an associate professor of bioengineering at Texas A & M University; he holds a doctor of science degree in bioengineering which is the application of principles of engineering to medical problems; and is concerned with designing medical equipment and working in consultation with hospitals to aid them in purchasing and using equipment. Over objection he was permitted to testify that it would have been appropriate for Air Shields to place a warning concerning RLF and oxygen administration on its incubator in 1968; and testified to a proposed warning which he stated would have been feasible for Air Shields to place on its incubator.

■ The competency of an expert witness is left to the sound discretion of the trial court. *Simpson v. Glenn*, (Amarillo, Tex.Civ.App.) NRE, 537 S.W.2d 114; *Texas Whse. Co. v. Springs Mills, Inc.*, (Waco, Tex.Civ.App.) NRE, 511 S.W.2d 735. The trial court has wide discretion, which may not be disturbed in the absence of clear abuse, in determining whether to admit conclusions and opinions of expert witnesses. *Green v. Houston Belt & Terminal Ry. Co.*, (14 Houston, Tex.Civ.App.) 558 S.W.2d 127.

We cannot say the trial court erred in admitting the complained of testimony of Dr. Hyman.

Contention 4 asserts there is no evidence and/or insufficient evidence to support the jury's answers to Issues 11, 12 a) b) and 13 a) b) and c); that such answers are against the great weight and preponderance of the evidence; and that the jury's answers to 12 a) b) and 13 a) b) c) are excessive.

Issue 11 awarded $100,000. for special training and education for Rusty until age 18; Issue 12 a) awarded $100,000. for past and b) awarded $900,000. for future mental suffering and physical disfigurement; 13 a) awarded $500,000. for loss of future earnings; b) awarded $10,000. for loss of past ability to care for and manage his own affairs, and c) awarded $250,000. for future loss of ability to care for and manage his own affairs.

As noted the trial court disregarded Issue 11.

Rusty Spears was blinded at birth and will be blind for his entire life. Loss of sight is loss of the most substantial part of an individual's perception of the world. In a visually oriented world simple tasks for the sighted become major obstacles for the blind—dressing, eating, moving about in public, catching a bus, distinguishing objects. Blind persons earn substantially less than sighted persons. Of the 20,000 to 30,-000 jobs available, the blind person is qualified for only about 200 of them. There is evidence Rusty would have a future loss of earning capacity of $1,939,546.

■ The amount of damages to be awarded for personal injuries is primarily a question for jury determination. *G.C. & S.F. Ry. Co. v. Hampton*, (Eastland, Tex. Civ.App.) NRE, 358 S.W.2d 690; and the jury has large discretion in fixing such awards. *Southern Pac. Transp. Co. v. Pera-*

*lez,* (Corpus Christi, Tex.Civ.App.) NRE, 546 S.W.2d 88.

■ We think the evidence ample to sustain Issues 12 a) b) and 13 a) b) c) and that such are not against the great weight and preponderance of the evidence; and are not excessive. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660.

Contention 5 asserts the trial court erred in admitting into evidence motion pictures of Rusty Spears because their prejudicial effect clearly outweighed their relevancy to any issue and their admission denied Air Shields a fair trial.

The motion picture films admitted over Air Shields' objections show Rusty when he was 2 and 6 years old, and run for approximately 15 minutes. The pictures show Rusty getting around in the house and in the yard. The pictures are factual and bore directly on questions concerning his life as a blind person, and in no way could be calculated to improperly influence the jury.

■ The general rule is that pictures or photographs that are relevant to any issue in a case are admissible. *Texas Employers Ins. Ass'n v. Agan,* (Eastland, Tex.Civ.App.) er. ref., 252 S.W.2d 743. And the trial judge is afforded wide discretion in determining the admissibility of photographs and motion pictures. *City of Fort Worth v. Barlow,* (Ft. Worth, Tex.Civ.App.) NRE, 313 S.W.2d 906. Texas Law of Evidence, McCormick & Ray, Sec. 1465.

■ The motion pictures were properly admitted.

■ Contention 6 asserts that plaintiffs' counsel's argument to the jury in 15 instances were so improper that it could not be cured by instruction. Air Shields' brief states "appellants recognize that some of the matters set forth as separate points of error on the issue of argument probably do not constitute reversible error when considered by themselves" but assert the argument as a whole was so inflammatory and prejudicial that its effect could not have been cured by an objection and instruction by the trial court.

Without detailing the argument complained of, we think from the record as a whole the argument complained of was neither improper nor prejudicial, was largely unobjected to, and in any event it was unlikely the jury was so influenced by the argument that it returned a verdict which it otherwise would not have returned.

■ Contention 7 asserts the trial court erred in overruling Air Shields' motion to dismiss for the reason this action is barred by the judgment entered in the prior case of "Alan B. Spears, individually and as next friend of Russell Alan Spears, a minor v. Dr. Lionel H. Rothenberg, et al."

In 1972 the minor plaintiff through his father as next friend filed suit against Dr. Rothenberg and Dr. Doncaster asserting negligence in administering oxygen after Rusty's birth causing his blindness. Such suit was compromised and settled for $100,-000. The agreement was that plaintiff would give the doctors a complete release for the $100,000. of liability insurance available, but would maintain all causes of action against anyone else. A guardian ad litem was appointed for the minor, and a hearing held before the trial judge, which entered a judgment for the minor plaintiff for the $100,000. The release of judgment specifically reserves all claims against all parties other than the two doctors. The judgment and release of judgment were both accomplished at the same time on the same day. It was not the intent to release anyone other than the two doctors, nor was it intended that $100,000. would represent all of Rusty's damages.

Had plaintiff not been a minor and released his claim against the two doctors named in such release, specifically reserving all claims against others, claims against others would not have been released. *McMillen v. Klingensmith,* Tex., 467 S.W.2d 193.

And where a minor (through next friend and attorney ad litem) settles a claim against a tort-feasor, reserving all claims against joint-feasors in the release, the release will be construed with the formal court judgment, and claims against those

not released will not be barred. *Brightwell v. Rabeck*, (Ft. Worth, Tex.Civ.App.) 430 S.W.2d 252; *Rexroat v. Prescott*, (Amarillo, Tex.Civ.App.) NRE, 570 S.W.2d 457; *Leong v. Wright*, (14 Houston, Tex.Civ.App.) 478 S.W.2d 839.

Thus, our situation is totally distinguishable from the facts in *T. L. James & Co., Inc. v. Statham*, Tex., 558 S.W.2d 865 where a prior judgment obtained in a contested trial against a tort-feasor, was held to bar subsequent suit against a joint tort-feasor.

All of Air Shields' points have been considered and are overruled.

*Southmore Hospital's Appeal*

■ Southmore appeals on 38 points which we summarize as 8 principal contentions.

Contention 1 asserts there is no evidence to show the specific policies and procedures which were in effect in the hospital nursery in 1970.

A copy of the written policies and procedures in 1970 was not available but there was evidence that the policies and procedures in effect in the hospital nursery regarding the administration of supplemental oxygen to premature infants were: 1) An order for administration of oxygen is given by phone or written by the physician. 2) In an emergency oxygen may be started by the nurse in charge, who notifies the physician and receives an order to continue its use. 3) Oxygen concentrations to be kept at 40% or below less otherwise specified by the physician.

There is evidence to show the policies and procedures in effect in the hospital nursery in 1970, regarding the administration of oxygen to premature infants.

■ Contention 2 asserts there is no evidence and/or insufficient evidence to support the jury's answers to Issues 5 and 6.

Issues 5 and 6 found the hospital was negligent in its policies and procedures in 1970 regarding the administration of supplemental oxygen to premature infants; and that such was a proximate cause of Rusty's blindness.

There is evidence that the purpose of policies and procedures in the nursery as applicable to this case was to establish minimal rules for the care of the infant, to advise doctors and nurses of hazardous procedures, to provide for safety of the infant, and to serve as a reminder to the nurse or doctor.

Southmore's policies and procedures in 1970 regarding the administration of oxygen to premature infants was basically that no oxygen should be administered (except in emergency) unless ordered by a physician, and that oxygen concentration should be kept at 40% or below unless otherwise ordered by the physician.

There is no evidence that other hospitals in Houston in 1970 had a policy similar to Southmore's; and there is evidence that two other hospitals in Houston in 1970 had policies designed to avoid the routine administration of oxygen.

The oxygen administered to Rusty by Dr. Rothenberg was in keeping and consistent with Southmore's policies in effect in 1970. Medical knowledge as of 1970 knew that duration of exposure was as dangerous as percentage—that there was no safe percentage—and that oxygen should not be routinely given.

We think the jury authorized to answer Issues 5 and 6 as they did; that there is evidence to sustain such findings; and that same is not against the great weight and preponderance of the evidence, *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660.

Contention 3 asserts there is no evidence and/or insufficient evidence that supplemental oxygen was a proximate cause of Rusty's injury.

Dr. Silverman, a pediatric opthalmologist, testified Rusty is permanently and completely blind because he was exposed to oxygen higher than room concentrations; and Dr. Doncaster testified that Rusty's blindness was caused by the oxygen administered during the first days of his life. While there was evidence that there could have been other causes we think the evi-

dence ample to sustain the jury's answer to Issue 6.

Contention 4 asserts the trial court erred in admitting into evidence the motion pictures of Rusty; contention 5 asserts the argument of plaintiffs' counsel so improper and prejudicial the hospital was denied a fair trial; contention 6 asserts the trial court erred in denying Southmore's motion to dismiss since plaintiffs' cause of action was barred by a previous judgment; and contention 7 asserts there is no evidence and/or insufficient evidence to sustain the damage issues, and that the damages awarded are excessive.

These contentions have been fully discussed in connection with Air Shields' appeal.

Southmore's contentions 1 through 7 (all points except 32) are overruled.

Contention 8 (point 32) asserts the trial court erred when it denied the Hospital's motion for full indemnity from Air Shields, since Air Shields failed to warn the hospital of dangers inherent in the use of its machine.

This case arose before the adoption of the comparative negligence statute (Article 2212a).

 Where there are two tort-feasors as here, both of whom are liable to the injured plaintiff, but one of whom has breached a duty he owed both to his co-tort-feasor and to the injured plaintiff, then the tort-feasor, who to his co-tort-feasor is blameless, should be allowed indemnity. Air Shields was found liable for failing to warn the users of the incubator (which included Southmore) of the dangers involved in the administration of supplemental oxygen. The manufacturer owed a duty to the hospital, as purchaser of the incubator, to warn of dangers in the use of the machine. *Bristol-Myers v. Gonzales*, Tex., 561 S.W.2d 801. There is evidence that the hospital's policies and procedures were dependent in part on the information received from the manufacturer of the medical equipment. Southmore is entitled to recover indemnity against Air Shields. *Austin Road Co. v.*

*Pope*, 147 Tex. 430, 216 S.W.2d 563; *General Motors Corp. v. Simmons*, Tex., 558 S.W.2d 855; *Butler v. Henry*, CCA (Waco) 589 S.W.2d 190.

Contention 8 (point 32) is sustained.

The minor plaintiff brings forward 5 cross points all of which have been considered and are overruled.

The minor plaintiff's joint and several judgment against Air Shields and Southmore Hospital is affirmed. The judgment is modified, to decree Southmore Hospital indemnity against Air Shields.

MODIFIED AND AFFIRMED.