Deborah Ann RUSH, et al., Appellants,

v.

BUCYRUS–ERIE COMPANY, Appellee.

No. 12–81–0058–CV.

Court of Appeals of Texas,
Tyler.

Jan. 27, 1983.

Rehearing Denied March 3, 1983.

Lawrence J. Madigan, Moriarty & Madigan, Houston, for appellants.

Dana G. Kirk, Fulbright & Jaworski, Houston, for appellee.

Before SUMMERS, C.J., and McKAY and COLLEY, JJ.

McKAY, Justice.

This is an appeal from a take-nothing judgment in a suit by appellants for wrongful death upon the theories of product liability and negligence. Wesley Rush, husband of appellant Deborah Ann Rush and father of Melanie Marie Rush, was killed on October 1, 1975, by the boom of a crane falling upon him while he was in the process of removing headed boom splice pins to dismantle and disassemble the boom. The appellee, Bucyrus-Erie (Bucyrus), was the manufacturer of the boom, a 30B Series 4 Super Crane.

Wesley Rush was a 20 year old construction worker with a wife and one minor child. On October 1, 1975, the date of his death, Rush was part of a three-man crew assigned to dissassemble the boom of a Bucyrus-Erie "30B Series 4 Super Crane" manufactured by defendant. The sections of such a crane boom are held together at their joints by "boom splice pins," which in turn are held in place by cotter pins. At the time of the incident, the boom was in a horizontal position about four feet off the ground, and was not supported at its front end. Rush was instructed to remove the "safety pins," which term apparently was used interchangeably to refer to both the boom splice pins and the cotter pins which held them in place. The testimony was in conflict as to whether Rush was specifically instructed *not* to remove the boom splice pins while the boom remained unsupported. At any rate, Rush did in fact remove the bottom two boom splice pins while standing under the boom's front section, which then fell on him and crushed him to death.

The central issue in the case was Bucyrus' use of "headed" boom splice pins, i.e., pins with a "head" on one end. These were driven in from the outside of the boom when assembling it, and therefore in disassembly it allegedly was necessary for the workman to get under or inside the boom to drive them out. Evidence was offered by appellants and admitted that some twenty months prior to Wesley's death, Bucyrus' safety coordinator had made a recommendation that the design of the boom splice pins be changed from a "headed" pin to a "headless" pin, which could be driven out from outside the boom. The stated reason for this change was that it would eliminate any reason for a workman to get under a boom to drive the pin out. Upon objection by Bucyrus the trial court refused to admit the further reason that Bucyrus had on file reports of two workmen being killed on separate occasions while standing under a boom and disassembling it. Ground for this objection was lack of similar circumstances in the two prior deaths, which was disputed by appellants.

Appellants submitted their case to the jury on three theories of liability:

(A) Design of the headed pins was defective and unreasonably dangerous because to knock them out the worker had to be in or under the boom, thus placing him in a position of unreasonable risk of harm. (Defective Design)

(B) Bucyrus failed to provide adequate warnings on removal of headed pins, and such failure rendered the headed pins defective and unreasonably dangerous. (Defective Marketing)

(C) Bucyrus was negligent in failing to use reasonable means available to it to replace the headed pins with headless pins prior to the date of Wesley's death. (Negligence)

The jury answered special issues as follows:

(1) Refused to find the headed pin defectively designed at time of manufacture;

(3) Refused to find that Bucyrus knew or could reasonably foresee that workers would remove the headed pin without supporting the boom;

(6) Refused to find that Bucyrus failed to use the reasonable means available to it to replace the headed pins with headless pins prior to Oct. 1, 1975 [date of Wesley's death];

(10–11) Found that removal of the headed pin under an unsupported boom was a misuse of the crane boom, and that such misuse was a proximate cause of the incident;

(12) Found that product misuse contributed "100%" to the incident—product defect "0%";

(13) Found that Rush assumed the risk of removing the headed pin from under an unsupported boom;

(14–15) Compensatory damages to wife and child—"zero";

(16) Exemplary damages to wife and child—"zero."

The rest of the issues, having been conditionally submitted, were not answered by the jury. The court accordingly entered a take-nothing judgment against plaintiffs.

Appellants bring 27 points of error. Points one through three complain the trial court erred in excluding evidence of the two prior accidents occurring under allegedly similar circumstances in which two workers were killed, and in excluding evidence of Bucyrus' proposed changes in its warnings and instructions on removal of headed boom splice pins. Both parties devoted the majority of their briefs to these issues. Appellants assert that the law is well established in both negligence and product liability cases that evidence of similar occurrences is both relevant and material (and hence admissible) on the issues of notice to the manufacturer of the danger, and of defective and unreasonably dangerous design. Bucyrus accepts this statement, but argues that appellants failed to establish the necessary predicate of "similar circumstances." Appellants argue that the necessary predicate was laid. Both parties argue the facts in support of their contentions. Bucyrus asserts that since the facts were conflicting, the trial court's resolution of the issue in their favor is binding on us absent an abuse of discretion. Bucyrus further asserts that even if the trial court erred in excluding this evidence, such error was harmless since there was already evidence in the record both on the issue of notice to Bucyrus and of defect in the product.

Appellants also assert that evidence of the two prior deaths was admissible on special issues three and ten, inquiring whether it was known or reasonably foreseeable to Bucyrus that workers would remove the pins without supporting the boom and whether Rush's removal of the pin was an unforeseeable misuse of the product. Bucyrus asserts that the relevant time frame for both these inquiries is foreseeability *at the time of manufacture.* The crane in question was manufactured two years prior to these two deaths.

Finally, appellants assert this evidence was admissible on issue six, inquiring whether Bucyrus used reasonable means available to it to replace the headed pins prior to Rush's death. Bucyrus makes no response to this contention.

Appellants then turn to the court's exclusion of evidence of Bucyrus' consideration of changes in its warnings and instructions on removal of boom splice pins, asserting it was material to issue three above. Bucyrus again counters with the assertion that the relevant time period for such foreseeability is the date of manufacture or marketing, and further asserts that subsequent warning changes are inadmissible in product liability cases. Bucyrus then renews its assertion that any error in excluding this evidence was harmless under the facts at trial. Appellants' answer to this contention is that the jury's failure to find the liability issues in its favor demonstrates that the exclusion of this evidence probably did cause rendition of an improper judgment,

since the jury's answers to these issues probably would have been different if this evidence had been admitted.

■ Both appellants and Bucyrus agree that it is well established in Texas that evidence of similar accidents is admissible. *Missouri-Kansas-Texas Railroad Co. v. May,* 600 S.W.2d 755, 756 (Tex.1980); *Caterpillar Tractor Co. v. Gonzales,* 599 S.W.2d 633, 639 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r. e.); *Air Shields, Inc. v. Spears,* 590 S.W.2d 574, 578–9 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.); *Magic Chef, Inc. v. Sibley,* 546 S.W.2d 851, 855 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.).

In *Missouri-Kansas-Texas Railroad Co. v. May, supra,* is the following language:

> We agree that the trial court erred in excluding evidence of certain similar accidents. *Evidence of earlier accidents which occurred under reasonably similar but not necessarily identical circumstances was admissible.* See *Missouri Pac. RR. v. Cooper,* 563 S.W.2d 233, 236 (Tex.1978). The exclusion of these similar accidents, offered by May to support his contention that the crossing was extra-hazardous, was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. Tex.R. Civ.P. 434, 503. (Emphasis added.)

And in *Magic Chef, Inc. v. Sibley, supra,* the court said

> Although the question has had little consideration by Texas courts, it is recognized as a general rule that evidence of other accidents involving the same product is admissible to show its dangerous or hazardous nature *if the accidents occurred under the same or similar circumstances as that involving the plaintiff.* [Citations omitted.] We see no difference in evidence of this type to show that the design is defective from the evidence offered by appellant that no difficulty had been experienced by any other user of this model range. The trial court did not err in overruling appellant's objections to this testimony. (Emphasis added.)

■ Bucyrus contends that the trial court correctly excluded any evidence pertaining to the deaths of two men killed while dismantling a Bucyrus crane boom because a proper predicate of similarity had not been established. We disagree with this contention. Appellants offered evidence, which was excluded by the trial court, that two men had been killed while dismantling similar booms manufactured by Bucyrus with headed boom splice pins. While the appellants may not have been able to discover or offer the details of these two previous accidents resulting in deaths, they did offer evidence of earlier accidents "which occurred under reasonably similar but not necessarily identical circumstances." Bucyrus agrees that its objection to the admission of evidence of the deaths of two workmen while dismantling a Bucyrus boom was on the ground that there was no predicate of similarity of occurrences and the court sustained the objection on that basis.

■ It is further argued by Bucyrus that whether a proper predicate had been established is a question of fact which must be determined by the trial court and not the appellate court. Bucyrus states that where there is conflicting evidence on an issue the finding of the trial court is binding on appellate review.

In our view the authorities cited by Bucyrus are not applicable here. In *Strange v. Treasure City,* 608 S.W.2d 604, 606 (Tex. 1980), it is said that the finding of the trial court on the fact of jury misconduct was binding on appellate review. The only statement in *Texas Employers Insurance Association v. Baeza,* 584 S.W.2d 317, 320 (Tex.Civ.App.—Amarillo 1979, no writ), which Bucyrus apparently is persuaded supports its argument, is "a requisite for the commencement of a suit is the plaintiff's bona fide intention to prosecute it, but this is a question of fact which must be determined by the trial court and not by the appellate court." In our view these cases do not prohibit this court from a review of the record to determine whether the evidence constituted a sufficient predicate as

to the similarity of the previous fatal accidents to permit admission of evidence of their occurrence.

The court in *Mitchell v. Fruehauf Corp.*, 568 F.2d 1139, 1147 (5th Cir.1978), citing *Magic Chef, Inc. v. Sibley, supra,* said

> The requisite degree of similarity is plainly not very high, as the only significant shared characteristics were the brand of the range and the inadvertence of ignition. Thus the 'substantially similar' standard as applied in *Magic Chef* is inclusive enough to allow the admission of evidence of previous turnovers involving trailers loaded with hanging meat.

See *Ramos v. Liberty Mutual Ins. Co.,* 615 F.2d 334, 338, 339, 341 (5th Cir.1980).

We are of the opinion that appellants offered sufficient evidence of similarity of the accidental death of Rush to the two previous fatal accidents to permit the admission of evidence of their occurrence, and the trial court erred in sustaining the objection of Bucyrus to such evidence. In our view the evidence of the two fatal accidents was admissible on the theory of defective design and failure to warn of the dangerous nature of the headed pin,[1] as well as on the theory of negligence in failure to replace the headed pins with headless pins.

We hold that the exclusion of this evidence was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Tex.R.Civ.P.

We do not reach appellant's other points.

Judgment of the trial court is reversed and the cause is remanded.

---

1. "Every manufacturer has a duty to warn of dangers in the use of its product." *Air Shields,* *Inc. v. Spears, supra,* 590 S.W.2d at 578.