No. 04-92-00387-CV



HYUNDAI MOTOR COMPANY; Hyundai Motor America, Inc.; and Port City Hyundai, Inc.,


Appellants



v.



Mario ALVARADO,


Appellee



From the 229th Judicial District Court, Duval County, Texas


Trial Court No. 14,492


Honorable Benjamin Euresti, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice

Dissenting Opinion by: Bill J. Stephens, Justice


Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice

 Bill J. Stephens, Justice(1)


Delivered and Filed: November 25, 1998


AFFIRMED AS MODIFIED


 This product liability suit against an automobile manufacturer, Hyundai,(2) resulted in a jury
verdict of $18 million. The suit was premised on the failure of a seatbelt to restrain Mario Alvarado
("Mario"), an occupant of a vehicle during an automobile accident. As a result of the injuries he
sustained in the accident, Mario is permanently paralyzed from his mid-chest downwards. The jury
found against Hyundai on liability, but awarded only actual damages, rejecting Mario's assertions
of gross negligence.

 Hyundai appeals on nine points of error. We affirm the judgment, as modified.

Prior Legal History


 This is an old case that appears destined to take a decade to resolve. It has already been the
subject of two Texas Supreme Court decisions. The car accident and injury occurred in 1989. The
jury rendered its verdict and judgment was entered in 1992. Today, in 1998, this court, for the first
time, addresses Hyundai's appellate points on the merits.

 Mario first filed his suit in Webb County, where the accident occurred. Mario alleged design
defect, inadequate warnings, and inadequate instructions regarding the seatbelts, as well as common-law negligence and gross negligence. Hyundai moved for partial summary judgment, asserting that
the claims relating to the seat belt inadequacies were all preempted by the federal Motor Safety Act.
The trial court granted the motion. Discouraged by that ruling, Mario sought to escape its effects
by taking a non-suit in Webb County and filing a subsequent suit relating to the same occurrence in
Duval County.

 The Webb County trial judge ruled that its non-suit order was with prejudice to the claims
adjudicated by the partial summary judgment. On appeal, this court disagreed, concluding that the
dismissal should have been without prejudice. Alvarado v. Hyundai Motor Co., 885 S.W.2d 167,
175 (Tex. App.--San Antonio 1994), rev'd, 892 S.W.2d 853 (1995). The Texas Supreme Court
reversed this court, holding that the non-suit order was with prejudice, but the Court remanded the
case to this court to consider whether the Webb County trial court erred in ruling that the claims
were preempted by federal law. Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 855 (Tex. 1995).

 On remand, this court held that there was neither express nor implied preemption of the
claims, and we reversed the Webb County judgment. Alvarado v. Hyundai Motor Co., 908 S.W.2d
243 (Tex. App.--San Antonio 1995), aff'd, 974 S.W.2d 1 (Tex. 1998). The Texas Supreme Court
affirmed our judgment, also concluding that the claims were not preempted by federal law. Hyundai
Motor Co. v. Alvarado, 974 S.W.2d 1 (Tex. 1998).

 We now address Hyundai's nine points of error on appeal from the Duval County judgment.

Factual History


 While some of the factual evidence was disputed, there was ample evidence, if believed, to
establish the following general facts.

 Mario, a high school student, was injured on February 17, 1989, while riding as a passenger
in the front seat of a Hyundai Excel when it overturned. The driver of the Excel, Vicente Reyes
("Reyes"), lost control while passing another vehicle on a rain-slick highway near Laredo in Webb
County. In addition to Reyes and Mario, two additional passengers were in the back seat of the
Excel: Fidel Alvarado, III and Marcus Ruiz. Only Mario was seriously injured.

 The Excel's seatbelt restraint system was a "two-point" system, which did not include a lap
belt.(3) Mario was wearing his seatbelt restraint at the time of the accident. During the accident, the
Excel's sunroof opened, and the restraint system did not restrain Mario, who was thrown from the
car. Mario sustained head injuries, causing him to be a permanent paraplegic.

 Mario alleged, and the jury found, that the Excel was a defective automobile and that its
seatbelt restraint system did not restrain. There are sufficient facts to uphold the verdict.

 At the time the Excel was made (1988), no other manufacturer was making a car with a
sunroof and only a two-point restraint system. Even without a sunroof, a car with a two-point
system was tested by General Motors in 1976, and General Motors reported that without a lap belt,
a dummy was completely ejected during a rollover. Swiss, Swedish, Canadian, and Australian
studies, as well as various other articles in government documents, all set forth the conclusion that
ejection is significantly more frequent in cars with only two-point restraint systems, and lap belts
make a critical difference in rollovers. The design engineer for the Excel, who decided not to put
a lap belt in the car, confirmed that he was aware of the Canadian report which concluded that a two-point system was less effective than a three-point system in preventing ejection during a collision.

 Hyundai had performed tests using an Excel with a two-point system but without a sunroof.
The tests, performed at twenty-one miles per hour, revealed that during a rollover an occupant would
"float" above the seat with his head in continuous contact with the car's roof. The owner's manual
published by Hyundai for the 1989 Excel expressly stated that "for full restraint system protection"
passengers needed to make sure that the lap belt was in place. Although this was the owner's manual
for 1989, it had been written several months before the Excel in question was manufactured and sold.
Suffice it to say that there was evidence, if believed, to support a finding of negligence, proximate
cause and damages.

 The jury found both Hyundai and the driver, Reyes, proximately caused Mario's injuries.
Reyes was found twenty percent liable, and Hyundai was found eighty percent liable. No negligence
was attributed to Mario. The jury also found that design and marketing defects in the Excel were
producing causes of Mario's injuries. The jury found no gross negligence on the part of Hyundai.

 The jury awarded Mario $18,000,000 in actual damages. The trial judge overruled Hyundai's
motion for judgment notwithstanding the verdict, and rendered judgment that Hyundai Motor
Company, Hyundai Motor America, Inc., and Reyes were jointly and several liable to Mario for the
full amount awarded by the jury. The judgment further held Port City Hyundai, Inc. severally liable
for $1,148,769.52.

Venue


 Hyundai contends in its first point of error that venue was improper in Duval County.
Hyundai asserts that Webb County, where the accident occurred, was the county of proper venue.

 The standard of appellate review in venue cases is governed by section 15.064(b) of the
Texas Civil Practice and Remedies Code, which states:

 On appeal from the trial on the merits, if venue was improper it shall in no event be
harmless error and shall be reversible error. In determining whether venue was or
was not proper, the appellate court shall consider the entire record, including the trial
on the merits.


Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (Vernon 1986). A trial court's venue determination
will be upheld on appeal if there is any "probative evidence" that venue was proper in the county
where judgment was rendered. Ruiz v. Conoco, Inc., 868 S.W.2d 752, 758 (Tex. 1993); Rosales v.
H.E. Butt Grocery Co., 905 S.W.2d 745, 750 (Tex. App.--San Antonio 1995, writ denied). If
Hyundai is correct in asserting that venue was improper in Duval County, the case must be reversed
and remanded.

 Two venue provisions contained in the Texas Civil Practice and Remedies Code are at issue
in this case. The first is section 15.061, which states:

 When two or more parties are joined as defendants in the same action or two or more
claims or causes of action are properly joined in one action and the court has venue
of an action or claim against any one defendant, the court also has venue of all claims
or actions against all defendants . . . .


Tex. Civ. Prac. & Rem. Code Ann. § 15.061 (Vernon 1986). The second section that must be
considered is 15.062, which provides:

 Venue of the main action shall establish venue of a counterclaim, cross claim or
third-party claim properly joined under the Texas Rules of Civil Procedure.


Tex. Civ. Prac. & Rem. Code Ann. § 15.062 (Vernon 1986).

 Alvarado filed this negligence suit in Duval County against Vicente Reyes, the driver of the
car. Reyes's mother, Rita Padron, was also sued under the doctrine of negligent entrustment. Both
Reyes and Padron timely answered the lawsuit with a general denial. They did not contest venue.
Reyes and Padron also filed a third-party claim against Hyundai for contribution and/or indemnity.
Alvarado then amended his petition to include negligence and product liability causes of action
against the third-party defendant, Hyundai. Hyundai timely filed an objection to venue, which was
denied by the trial court.

 Venue in Duval County is clearly proper as to Reyes and Padron. Rule 86 of the Texas Rules
of Civil Procedure states in part:

 An objection to improper venue is waived if not made by written motion filed prior
to or concurrently with any other plea, pleading or motion except a special
appearance motion provided for in Rule 120a.


Tex. R. Civ. P. 86. Once Reyes and Padron answered the lawsuit without raising any venue
objection, they were properly in the Duval County suit.(4) See Garza v. Texas Dept. of Human
Services, 757 S.W.2d 44, 47-48 (Tex. App.--San Antonio 1988, writ denied); Sutton v. State Bar
of Texas, 750 S.W.2d 853, 855 (Tex. App.--El Paso 1988, writ denied).

 Nevertheless, a wavier of venue by one defendant [Reyes and Padron] does not prevent
another defendant [Hyundai] from appropriately challenging venue. See WFTO, Inc. v. Braithwaite,
899 S.W.2d 709, 718 (Tex. App.--Dallas 1995, no writ) (holding that waiver by one defendant does
not prevent another defendant from appropriately challenging venue by filing a motion to transfer);
Pearson v. Jones Co., Ltd., 898 S.W.2d 329, 332-33 (Tex. App.--Eastland 1994, no writ) (waiver
of venue by two defendants through the filing of answers and making general appearances does not
waive other defendant's venue objection). If waiver were the only ground relied upon by Mario to
establish Duval County as a proper venue with respect to Hyundai, our decision would be an easy
one. Reyes and Padron can only waive their own venue rights: not the venue rights of Hyundai. But
that is not really the legal issue presented. The real issue is whether "tag-along" venue is a legitimate
method of acquiring venue. The following quote demonstrates a belief that it is:

 This (the venue statute) permits a plaintiff to establish venue against a target
defendant by first filing suit against a friendly defendant, who then will file a third-party action against the target defendant.


Justice Michol O'Connor, et al., O'Connor's Texas Rules: Civil Trials 95 (1997). This also
appears to have been the opinion of the Texas Supreme Court, at least until the venue statute was
amended by the legislature after this case was ruled upon by the trial court. In Polaris Inv.
Management Corp. v. Abascal, 892 S.W.2d 860, 862 (Tex. 1995), the Court stated:

 For this reason, Polaris invites this Court to reinterpret section 15.061 of the Texas
Civil Practice and Remedies Code to prohibit what it characterizes as plaintiffs' "tag-along" venue. . . . It is well settled that "when the Legislature has spoken on a
subject, its determination is binding upon the courts unless the Legislature has
exceeded its constitutional authority." . . . Venue is a creature of legislative grace,
and because a change of venue was unknown to the common law, the power to make
venue changes is purely statutory. . . . Accordingly, appellate review of trial court
venue rulings is generally limited to a determination of whether the trial court ruling
was faithful to the relevant venue statute. It is not within the province of this Court
to reconstrue, rewrite or contravene a venue statute when the intent of the Legislature
is clear.


 The "tag-along" in Polaris referred to plaintiffs, and in the instant case, we are speaking of
defendants, but we do not think this is a meaningful distinction. All the reasons given by the
Supreme Court in Polaris are equally relevant whether speaking of one side of the docket or the
other. It should be noted that because of the language in Polaris, and other cases where either real
or perceived abuses occurred under the law existing at the time Polaris was decided, the Legislature
amended the venue statute in 1995. The stated purpose of Senate Bill 32 (which became the new
venue statute) was to "eliminate the many loopholes and legal strategies that promote forum
shopping -- allowing someone to choose the most favorable county despite its tenuous connection
to the case." House Research Organization, Bill Analysis, Tex. S.B. 32, 74th Leg., R.S.
(1995).

 It is not necessary for this court to determine in this case whether the 1995 venue statute still
allows "tag-along" venue for either defendants or plaintiffs, or if that has become a relic of discarded
artifacts of legal history. But we do agree with Polaris and Justice O'Connor that at the time this
decision was made by the trial court in 1991, it was allowed. Accordingly, we overrule Hyundai's
first point of error.

Res Judicata


 Hyundai's second point of error contends that the trial court erred in denying defendants'
motion for judgment notwithstanding the verdict because any recovery in the Duval County suit was
barred by the judgment in the earlier Webb County suit. The judgment in the Webb County suit,
however, has been reversed on appeal. See Alvarado v. Hyundai Motor Co., 908 S.W.2d 243 (Tex.
App.--San Antonio 1995), aff'd, 974 S.W.2d 1 (Tex. 1998). A judgment that has been reversed on
appeal does not have res judicata effect. Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 6 (Tex.
1986); Acker v. Denton Publ'g Co., 937 S.W.2d 111, 117-18 (Tex. App.--Fort Worth 1996, no
writ); Krenek v. Texstar North America, Inc., 787 S.W.2d 566, 569 (Tex. App.--Corpus Christi
1990, writ denied). Hyundai's second point of error is overruled.

Plea in Abatement


 In Hyundai's third point of error, Hyundai contends that the trial court erred in refusing to
abate the Duval County suit because Webb County had dominant jurisdiction over the cause of
action.

 "When an inherent interrelationship of the subject matter exists in two pending lawsuits, a
plea in abatement in the second action must be granted." Wyatt v. Shaw Plumbing Co., 760 S.W.2d
245, 247 (Tex. 1988). In reviewing a trial court's ruling on a plea in abatement, we must consider
whether an identity exists between the issues in the two causes. Dolenz v. Continental Nat'l Bank
of Fort Worth, 620 S.W.2d 572, 575 (Tex. 1981). In the absence of an identity between the issues,
the trial court has the discretion to deny the abatement. Dolenz, 620 S.W.2d at 575. If the prior
lawsuit is dismissed, the grounds for abatement cease to exist because the first lawsuit is no longer
pending. See Pleasants v. Emmons, 871 S.W.2d 296, 298 (Tex. App.--Eastland 1994, no writ);
Trapnell v. Hunter, 785 S.W.2d 426, 427 (Tex. App.--Corpus Christi 1990, orig. proceeding).

 Hyundai contends that Mario's dismissal of the Webb County suit did not deprive Webb
County of jurisdiction because an appeal relating to Webb County's summary judgment was
pending. Although we agree that Webb County retained jurisdiction over the issues decided in the
summary judgment while the appeal was pending, see Prairie Producing Co. v. Martens, 705
S.W.2d 257, 260 (Tex. App.--Texarkana 1986, writ ref'd n.r.e.), abatement was no longer required
with respect to the other issues raised in the Duval County lawsuit because the Webb County suit
was no longer pending as to those issues. See Pleasants v. Emmons, 871 S.W.2d at 298; Trapnell,
785 S.W.2d at 427. The trial court recognized this distinction and granted the plea in abatement as
to the issues pending on appeal arising out of the Webb County litigation.(5) To the extent Mario
offered evidence with regard to the issues the trial court's order abated, Hyundai could complain of
the erroneous admission of such evidence on relevancy or other grounds. Hyundai cannot, however,
bootstrap the abatement argument with the subsequent developments at trial in an effort to show
harm from the trial court's partial denial of the abatement. Given the dismissal of the prior lawsuit,
the trial court did not abuse its discretion in denying the plea in abatement as to those issues that
were not pending in the prior lawsuit at the time the dismissal was ordered.(6) Hyundai's third point
of error is overruled.

Evidentiary Rulings


 Hyundai's fourth and fifth points of error complain of the trial court's admission of certain
evidence. The admission of evidence is committed to the trial court's discretion. City of Brownsville
v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A trial court's judgment will not be reversed on
appeal on the basis of erroneously admitted evidence unless the complaining party shows that: (1)
the trial court erred in admitting the evidence; and (2) such error was reasonably calculated to cause
and probably did cause rendition of an improper judgment or was such that it prevented the
complaining party from making a proper presentation of the case to the appellate court. Uniroyal
Goodrich Tire Co. v. Martinez, No. 95-1159, 1998 WL 352929, at *9 (Tex. July 3, 1998).

A. Other Accidents

 Hyundai timely objected to testimony regarding other accidents, and Hyundai's fourth point
of error asserts that the trial court's failure to sustain these objections was reversible error.
Specifically, Hyundai complains about the testimony given by Linda Eastman and Michael Herrera.

 Eastman was designated by Hyundai to testify about similar claims involving the failure of
Hyundai's passive restraint systems. She testified that Hyundai had notice of five other claims for
accidents involving rollovers and ejections, or failure to restrain during the malfunction of passive
restraint systems installed in Hyundai vehicles. Eastman testified that each of the five claims
involved a rollover ejection or a rollover in which the restraint system failed. She also testified that
Mario's claim involved a rollover ejection.

 Herrera testified that he and his wife had been involved in a rollover accident in a 1987
Hyundai Excel with a two-point passive restraint system. Although both were wearing their
seatbelts, his wife was ejected from the car and died as a result of her injuries.

 In products liability cases, evidence of other accidents involving the same product is
admissible if such accidents occurred under reasonably similar, but not necessarily identical,
circumstances to those surrounding the litigated event. See Uniroyal Goodrich Tire Co. v. Martinez,
No. 95-1159, 1998 WL 352929, at *10 & n.7; Missouri -Kansas-Texas R.R. Co. v. May, 600 S.W.2d
755, 756 (Tex. 1980). In applying this rule, courts have recognized that "the requisite degree of
similarity is plainly not very high." McInnes v. Yamaha Motor Corp., U.S.A., 659 S.W.2d 704, 709
(Tex. App.--Corpus Christi 1983), aff 'd, 673 S.W.2d 185 (Tex. 1984), cert. denied, 469 U.S. 1107
(1985); see also Rush v. Bucyrus-Erie Co., 646 S.W.2d 298, 302 (Tex. App.--Tyler 1983, writ ref'd
n.r.e.).

 Hyundai asserts that sufficient similarity was not shown because the other accidents did not
involve cars with sunroofs and the evidence did not detail the circumstances surrounding each of
these accidents. We disagree. In Magic Chef, Inc. v. Sibley, 546 S.W.2d 851, 855 (Tex. Civ.
App.--San Antonio 1977, writ ref'd n.r.e.), the only significant shared characteristics justifying
admissibility were the brand of range and the inadvertence of ignition. In this case, the evidence
indicated that the other accidents generally shared some, if not all, of the following characteristics:
type of vehicle; manufacturer; type of restraint system; rollover-ejection type of accident; and failure
of passive restraint system. We hold that the other accidents were reasonably similar, though not
necessarily identical. The fact that most of the vehicles involved in the other accidents did not have
sunroofs does not detract from the similarity of the failure of the other vehicles' two-point safety
restraint systems, which allowed the occupants of the vehicles to "float" above their seats.

 Hyundai also argues that the other accidents are not admissible because they were based on
mere allegations or claims. However, evidence of other accidents that have been found admissible
in other cases generally involve evidence of complaints or accident reports involving the defect. See
McEwen v. Wal-Mart Stores, Inc., 975 S.W.2d 25 (Tex. App.--San Antonio 1998, pet. filed)
(accident reports); McInnes, 659 S.W.2d at 709 (warranty complaints). These cases do not require
that the similar accidents be proven to have occurred as stated in a complaint with absolute certainty.
The fact that the other complaints have not been so proven goes to their weight, not to their
admissibility. Hyundai's fourth point of error is overruled.

B. "ODI Resume"

 Hyundai next complains that the trial court erred in admitting into evidence the "ODI
Resume." The ODI Resume was a one-page document prepared by the National Highway
Transportation Safety Administration ("NHTSA"), Office of Defect Investigation ("ODI"), as a
product of its investigation concerning consumer complaints about two-point passive restraint
systems in 1987, 1988, and 1989 Hyundai Excels.(7) Hyundai complains that the ODI Resume is
hearsay that does not meet the criteria of rule 803(8) of the Texas Rules of Civil Evidence because
it does not reflect any factual findings resulting from an investigation. Rule 803(8) provides as
follows:

 Public records and reports. Records, reports, statements, or data compilations, in
any form, of public offices or agencies setting forth (A) the activities of the office or
agency, or (B) matters observed pursuant to duty imposed by law as to which matters
there was a duty to report, or (C) factual findings resulting from an investigation
made pursuant to authority granted by law; unless the source of information or other
circumstances indicate lack of trustworthiness.


Hyundai contends that the ODI Resume was simply a document prepared by private individuals and
filed with a governmental agency. For this reason, Hyundai concludes that the ODI Resume was not
an official document within the meaning of rule 803(8). See Railroad Comm'n of Tex. v. Rio Grande
Valley Gas Co., 683 S.W.2d 783, 788 (Tex. App.--Austin 1984, no writ).

 A review of the ODI Resume reveals, however, that it was in fact prepared by the NHTSA,
a branch of the federal government. The document was not simply prepared by individuals and filed
with the government. The document is a report on the ODI's investigation into consumer
complaints. The investigation had an assigned number, and the document upgraded a preliminary
evaluation to an engineering analysis, with the assignment of a principal engineer. Unlike the federal
cases cited by Hyundai, this report reflects the ODI's decision to upgrade its investigation based on
its factual findings from its preliminary evaluation. Thus, it reflects the ODI's position regarding
its continued investigation, not a preliminary position of an individual staff member or a draft
position subject to later change. As a direct result of this document, the investigation was upgraded.
As a report from a federal agency containing data compilations of consumer complaints and setting
forth the agency's investigation activities and matters observed pursuant to its duty to investigate
defects, the ODI Resume falls within rule 803(8)'s exception to the hearsay rule.

 Even if we are wrong in our conclusion that the ODI Resume was properly admitted under
rule 803(8), the trial court instructed the jury that the document was not to be considered as proof
of a defect in the car, of negligence, or of gross negligence. The submitted instruction served to
sufficiently limit the jury's consideration of the ODI Resume, thereby alleviating whatever
prejudicial effect the admission of the report may have had on Hyundai. See John Deere Co. v. May,
773 S.W.2d 369, 375 (Tex. App.--Waco 1989, writ denied); Air Shields, Inc. v. Spears, 590 S.W.2d
574, 579 (Tex. Civ. App.--Waco 1979, writ ref'd n.r.e.). This is particularly true in light of the
other testimony and studies that were admitted regarding Hyundai's notice of the defect. Therefore,
assuming that the ODI Resume was erroneously admitted, we do not believe Hyundai has shown that
such error was reasonably calculated to cause and probably did cause the rendition of an improper
judgment in view of the limiting instruction and the other evidence presented. See Uniroyal
Goodrich Tire Co. v. Martinez, No. 95-1159, 1998 WL 352929, at *9.

 Hyundai's fifth point of error is overruled.

Allocation of Peremptory Strikes


 Hyundai's sixth point of error complains that the trial court erred in failing to reallocate the
peremptory strikes because the defendants were antagonistic to each other. Specifically, Hyundai
claims that defendants Reyes and Padron should have been aligned with Mario and that the
peremptory challenges should have been allocated in a different manner.

 At the conclusion of the voir dire examination, but prior to the exercise of peremptory
challenges, Hyundai filed a motion for proper alignment of parties and for equalization of
peremptory challenges to jurors. Hyundai urged that Reyes and Padron should be aligned with
Mario because there was no antagonism between them. Significantly, Hyundai failed to allege that
there was antagonism between Hyundai and Reyes. The trial court denied the motion and allocated
three strikes to Hyundai, three strikes to Reyes and Padron, and six strikes to Mario.

 In determining whether the trial court erred, we consider the pleadings, information disclosed
by pretrial discovery, information disclosed during the voir dire examination and other information
brought to the attention of the trial court. Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 5 (Tex.
1986); American Cyanamid v. Frankson, 732 S.W.2d 648, 651 (Tex. App.--Corpus Christi 1987,
writ ref'd n.r.e.). The existence of antagonism is a question of law. Garcia v. Central Power &
Light Co., 704 S.W.2d 734, 736 (Tex. 1986); Patterson Dental Co. v. Dunn, 592 S.W.2d 914, 919
(Tex. 1979).

 Mario's pleadings alleged various acts of negligence against both Reyes and Hyundai. The
defendants filed cross-actions against each other. During discovery, Reyes entered into an
agreement with Hyundai in which each side agreed to limit its discovery efforts. Reyes stipulated
that he would not name any independent experts but would rely on Hyundai's experts. Mario
refused Reyes's offer of his insurance policy limits prior to trial. During voir dire, Mario's attorney
told the jury that "what this lawsuit boils down to is that we are trying to collect for these two young
men in a legal debt that the driver and Hyundai, American Hyundai and Laredo Hyundai, that we
say they owe." Reyes's counsel stated: "I suspect that Hyundai lawyers will get up here and say to
you that this accident was all Vince's [Reyes's] fault." Counsel for Hyundai argued that Reyes's
speeding caused the accident. Defendants are antagonistic with each other when each one is
contending that the other person is solely responsible for plaintiff's injuries. Patterson Dental Co.,
592 S.W.2d at 918. Since there was antagonism, the trial court should have equalized, in some form,
the peremptory strikes.

 In order to obtain a reversal, Hyundai must show, based on the entire record, that the trial was
materially unfair. Garcia, 704 S.W.2d at 737. In determining whether the trial court's decision in
allocating peremptory strikes was so erroneous as to require reversal, this court must determine
whether the trial was hotly contested and the evidence sharply conflicting. Patterson Dental Co.,
592 S.W.2d at 921. Hyundai argues that since there was conflicting evidence at trial, it is entitled
to a new trial. In general, however, all cases that are submitted to a jury involve conflicting evidence
and contested issues. If there was no conflict, there would be no need for a trial. See Jack Ratliff,
Peremptory Challenges and Contested Trial: Some Like it Hot, 30 S. Tex. L. Rev. 311 (1989). We
understand Patterson Dental to require that we look at factors such as the number of questions to
the jury, whether the verdict was unanimous, and whether any motions for summary judgment or
instructed verdict were made. 592 S.W.2d at 921. Here, although Hyundai moved for an instructed
verdict, only eight questions were submitted to the jury, and the verdict was unanimous. The jury
did not find gross negligence and failed to award punitive damages. Moreover, the jury did not
award Fidel Alvarado any damages based on his bystander claim. Finally, the jury assessed twenty
percent of the responsibility to Reyes. As a result of these factors, it has not been shown that this
was a materially unfair trial.

 Hyundai's sixth point of error is overruled.

Prejudgment Interest


 In Hyundai's seventh complaint, Hyundai contends that the trial court erred in awarding
prejudgment interest from the date the Webb County suit was filed. The instant suit against Hyundai
was not filed in Duval County until February 7, 1991. Mario's proposed judgment included
prejudgment interest from June 26, 1989, the date the Webb County suit was filed. Overruling
Hyundai's objection that prejudgment interest should begin 180 days after June 26, 1989, the trial
court rendered judgment that Mario recover prejudgment interest from June 26, 1989. This 180 day
difference amounts to approximately $900,000 in prejudgment interest to which Hyundai claims
Mario is not entitled. We agree with Hyundai.

 An award of prejudgment interest is governed by Section 6(a) of article 5069-1.05 of the
Texas Revised Civil Statutes, which provided, in pertinent part:

 . . . Judgments in wrongful death, personal injury, and property damage cases must
include prejudgment interest. . . . [P]rejudgment interest accrues on the amount of the
judgment during the period beginning on the 180th day after the date the defendant
receives written notice of a claim or on the day the suit is filed, whichever occurs
first, and ending on the day preceding the date judgment is rendered.


Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6(a) (Vernon Supp. 1998). The trial court construed
"the suit" to include the prior action brought by Mario in Webb County. We construe the phrase "the
suit" to mean the suit in which the judgment is rendered. "The suit" in this case means the suit in
Duval County filed on February 8, 1991.

 The Webb County suit is relevant to the prejudgment interest determination, however, insofar
as service of the petition constituted receipt by Hyundai of "written notice of a claim." It is difficult
to conceive of a more formal notice than a lawsuit. The question then is which came first: (1) the
suit in Duval County [February 8, 1991]; or (2) 180 days after written notice [December 23, 1989]?
Clearly, it is the latter. Under section 6(a) of article 5069-1.05, Mario is entitled to prejudgment
interest beginning no earlier than December 23, 1989, 180 days after Hyundai received written notice
of Mario's claim through service of process in the Webb County suit. Because the trial court
calculated prejudgment interest from a date that was 180 days too early, the judgment against
Hyundai Motor Company and Hyundai Motor America, Inc. is excessive by $887,671.23. The
judgment against Port City Hyundai, Inc., which is based on the amount awarded against Hyundai
Motor Company and Hyundai Motor America, Inc., is excessive by $44,385.56. Hyundai's seventh
point of error is sustained, and we modify the trial court's judgment by ordering a deletion of the
excessive prejudgment interest awards.

Federal Preemption


 Hyundai's eighth point of error urges that the trial court erred in permitting the jury to
consider any claim based on the theory that the Excel should have had a lap belt because the state-law theory is preempted by the Supremacy Clause of the United States Constitution. This issue was
resolved against Hyundai's position in Hyundai Motor Co. v. Alvarado, 974 S.W.2d 1 (Tex. 1998).
Hyundai's eighth point of error is overruled.

Sufficiency of the Evidence


 Hyundai's ninth point of error complains that the evidence was insufficient to support the
jury's findings on proximate and producing cause. The crux of Hyundai's argument is that Hyundai
conclusively established that Mario was not wearing his seat belt at the time of the accident;
therefore, the evidence was insufficient to support the jury's finding that the passive restraint system
in the Excel was a proximate or producing cause of Mario's injuries.

 We briefly summarize the evidence on this point. Hyundai presented testimony from two
experts who concluded that Mario was not wearing a seat belt based on their observations of the
wreckage and review of the medical records. Hyundai also introduced the testimony of a witness
who arrived at the scene shortly after the accident. However, Mario testified that he was wearing
a seat belt, and his testimony was confirmed by Reyes and Fidel Alvarado, who were in the car with
Mario. Two additional witnesses testified that they saw Mario with his seat belt on at the last rest-stop before the accident. The police report also recited that everyone in the car, including Mario,
was wearing a seat belt at the time of the accident. One of Mario's experts also testified that Mario
was wearing his seat belt.

 This is simply a case of conflicting evidence. Where conflicting evidence is presented, we
are not called upon to reweigh the evidence; the jury's verdict on such matters is considered to be
conclusive. Sanchez v. Guerrero, 885 S.W.2d 487, 491 (Tex. App.--El Paso 1994, no writ); USX
Corp. v. Salinas, 818 S.W.2d 473, 489 (Tex. App.--San Antonio 1991, writ denied). Hyundai's
ninth point of error is overruled.

Conclusion


 The trial court's judgment is modified in the following respects: (1) the judgment against
Hyundai Motor Company and Hyundai Motor America, Inc. is modified by deleting $887,671.23
from the prejudgment interest award; and (2) the judgment against Port City Hyundai, Inc. is
modified by deleting $44,383.56 from the prejudgment interest award. As modified, the trial court's
judgment is affirmed.

 PHIL HARDBERGER,

 CHIEF JUSTICE

PUBLISH 



1. The Honorable Bill J. Stephens, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by
assignment.
2. For ease of reference, we refer to appellants in this opinion collectively as "Hyundai," unless specific reference
is required for purposes of clarity.
3. Systems with a lap belt are called a "three-point" system.
4. Reyes and Padron also later failed to contest the venue question contained in a request for admissions. As a
result, their residency in Duval County was deemed admitted.
5. The order grants the plea in abatement as to the following allegations: (1) the vehicle in question was not
equipped with an active lap belt; (2) the Defendants failed to give adequate warnings of the increased danger to which
passengers were exposed by the lack of an active lap belt; and (3) the Defendants failed to adequately test the passenger
restraint system. These are identical to the issues presented in the petition filed in Webb County. See Alvarado, 885
S.W.2d at 168-69. Hyundai's motion for partial summary judgment asserted that each of these claims, except the failure
to instruct claim, was preempted by federal law. Hyundai Motor Co., 892 S.W.2d at 854.
6. Hyundai further contends that the trial court's order results in an improper splitting of Mario's cause of action.
Hyundai recognizes, however, that the rule against splitting a single cause of action is a branch of the res judicata
doctrine. See Pierce v. Reynolds, 160 Tex. 198, 329 S.W.2d 76, 78 (1959); Adler v. Beverly Hills Hosp., 594 S.W.2d
153, 156 (Tex. Civ. App.--Dallas 1980, no writ). We previously addressed Hyundai's res judicata argument and
conclude that to the extent the res judicata argument fails, Hyundai's improper splitting argument must also fail.
7. Under the heading of the ODI Resume it states:


 Investigation: PE91-097

 Subject: Automatic Shoulder Belt Failure

 Prompted By: Consumer Complaints


 The Synopsis of the ODI resume states: "The automatic shoulder belt (2-point non-motorized passive belt)
system may not provide adequate protection to the front seat occupants during a crash." The summary of the ODI
Resume provides:


 Most complaints allege that the automatic shoulder belt did not properly restrain the occupants during
accidents: 48 accidents resulted in 43 injuries and 7 fatalities. Other complaints state that the shoulder
belts do not retract properly. The subject vehicles are not equipped with front seat lap belts. Model
year 1989 Excels are added to the investigation because these passive belts appear to be identical to
1987 and 1988 Excel passive belts; the ODI complaint database also shows several reports on the
1989 Excels.


 A preliminary analysis of the ODI complaint database shows that the complaint rate is higher for the
subject vehicles than for the Excels equipped with 3-point manual belts (note: both active and passive
belts were available in the 1987-1989 Excels). Also, the complaint rate for the subject vehicles is the
highest among all models which have the 2-point non-motorized passive belt system.


Return to
4th Court of Appeals Opinions